## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:18-cv-02340-RJL** |
| **CVS HEALTH CORPORATION** *et al.,* | |
| **Defendants.** | |

## MOTION FOR LEAVE TO INTERVENE BY CONSUMER ACTION and U.S. PIRG OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE

Pursuant to Rule 24 and 15 U.S.C. §16(f)(3), Consumer Action and U.S. PIRG respectfully request leave to intervene in this Tunney Act proceeding for the limited purpose of assisting the Court in understanding the inadequacy of the remedies contained in the Proposed Final Judgment ("PFJ"), submitted by the United States Department of Justice ("DOJ"), concerning the merger between CVS Health, Inc. and Aetna Inc.  15 U.S.C. §16(f) authorizes the Court to grant full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae and intervention as a party pursuant to the Federal Rules of Civil Procedure.

Consumer Action and U.S. PIRG advocate for consumers and patients that are beneficiaries of the services provided by the merging parties across the country, and respectfully requests that this Court permit their intervention for the limited purpose of 1) submitting their support for the court entering an Order requiring CVS to keep the Aetna business separate, and all attendant relief, until the Court completes its determination of whether the Proposed Final

Judgment is in the Public Interest; ; 2) submitting a response to the Court to the DOJ's response

to public comments submitted pursuant to this Tunney Act review; 3) participating in hearings

held by the Court (or seeking a hearing if necessary); and 4) participating in any discovery

relevant to DOJ's relevant market definition, competitive effect in the relevant market, and any

information DOJ considered in determining the proposed remedy.  In the alternative, Consumer

Action and U.S. PIRG respectfully request leave to participate to a similar extent as *amicus*

*curiae.*

Counsel requests an opportunity to make an argument at the Court's hearing scheduled

for December 18, 2018.

## Local Rule 7(m) Statement

Pursuant to Local Rule 7(m), Consumer Action and U.S. PIRG's counsel has conferred

with counsel for DOJ and emailed the Defendants.  The DOJ opposes the Motion to Intervene

but will not oppose a Motion to participate as Amicus Curiae.   The Defendants have not

responded as of the filing of this Motion.

## CORPORATE DISCLOSURE STATEMENT

Consumer Action is a non-profit corporation, has no parent company, and issues no stock.

U.S. PIRG is a non-profit corporation, has no parent company, and issues no stock.

Dated: December 14, 2018

Respectfully submitted

/s David Balto

**David A. Balto**
Attorney at Law
8030 Ellingson Drive
Chevy Chase, MD
20815
(202) 577-5424
Email: david.balto@dcantitrustlaw.com
*Attorney for Consumer Groups*

## Table of Contents

TABLE OF AUTHORITIES ........................................................................................................II

INTEREST OF PROPOSED INTERVENOR/AMICUS CURIAE ............................................... 1

INTRODUCTION ...................................................................................................................... 2

ARGUMENT ............................................................................................................................. 7

I. THE COURT MUST DETERMINE WHETHER THE PROPOSED FINAL JUDGMENT IS
IN THE PUBLIC INTEREST.........................................................................................................5

II. CONSUMER ACTION AND U.S. PIRG SHOULD BE GRANTED PERMISSIVE
INTERVENTION TO ASSIST THE COURT IN MAKING ITS PUBLIC INTEREST
DETERMINATION......................................................................................................................9

A.      CONSUMER ACTION AND U.S. PIRG'S MOTION IS TIMELY AND WILL NOT
UNDULY DELAY OR  PREJUDICE THE ADJUDICATION OF THE RIGHTS OF THE
ORIGINAL PARTIES ............................................................................................................ 11

B.      CONSUMER ACTION AND U.S. PIRG HAVE CLAIMS THAT SHARE A
QUESTION OF LAW OR FACT WITH THE  MAIN ACTION. ............................................. 13

III. THIS COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER THE
PFJ IS IN THE PUBLIC INTEREST............................................................................................12

CONCLUSION.......................................................................................................................... 19

# Table of Authorities

**CASES**

*Diamond v. Charles*, 476 U.S. 54 (1986) .........................................................................................13
*Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) .........................13
*Massachusetts v. Microsoft*, 373 F.3d 1199  (D.C. Cir. 2004) ...............................................................13
*Nat. Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345 (1973).........................................11
*nited States v. AT&T Co.*, 642 F.2d 1285 (D.C. Cir. 1980) ................................................................12
*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) .........................................................................13
*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ....................................................................13
*Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309 (6th Cir. 2005)...............................13
*Smuck v. Hobson*, 408 F.2d 175 (D.C. Cir. 1969) ........................................................................12
*Spring Constr. Co. v. Harris*, 614 F.2d 374 (4th Cir. 1980) .............................................................13
*Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765 (D.C. Cir. 1955)....................................13
*U.S v. Anheuser-Busch InBev SA/NV and SABMiller PLC*, CA No. 1:16-cv-1483 (October 22, 2018)..................7, 10
*U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009)......................................................13
*U.S. v. Philip Morris USA, Inc.*, No. 99-2496, 2005 WL 1830815 (D.D.C. July 22, 2005) .................................13
U.S., et al. v. US Airways Group, Inc. and AMR Corporation, 1:13-cv-01236 (April 25, 2014 Final Judgment)......11
*United States v. Aetna, Inc.*, Memorandum and Opinion Filed January 23, 2017 ........................................16
*United States v. Airline Tariff Pub. Co.*, 836 F. Supp. 9 (D.D.C. 1993)....................................................8
*United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131 (D.D.C. 1982)................................................8, 15
*United States v. AT&T Inc.*, 541 F. Supp. 2d 2 (D.D.C. 2008)........................................................8, 10
*United States v. Blavatnik*, No. CV 15-1631 (RDM), 2016 WL 593449 (D.D.C. Feb. 12, 2016)...............................8
*United States v. BNS, Inc.*, 858 F.2d 456  (9th Cir. 1988) ................................................................9
*United States v. SBC Commc'ns, Inc. et al.*, 489 F. Supp. 2d 1 (D.D.C. 2007) .......................................1,8
*United States. v. Comcast Corp.*, 808 F. Supp. 2d 145 (2011) .............................................................9
*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009) .....................................................13

**STATUTES**

Antitrust Procedures and Penalties Act, 15 USC § 16 ("Tunney Act"), .......................................1, 5, 9, 12

**OTHER AUTHORITIES**

150 Cong. Rec. S3615 (Apr. 2, 2004) ........................................................................................7
150 Cong. Rec. S3617 (Apr. 2, 2004) ........................................................................................7
Ana Marum, *Failed divestiture: Albertsons is bidding on 36 Haggen stores, including some it used to own,* The
    Oregonian (Nov.10, 2015) ..............................................................................................3
Bret Kendall, *How the FTC's Hertz Antitrust Fix Went Flat,* Wall Street Journal (Dec. 8, 2013) ......................3
Catherine A. Peterman, The Future of Airline Mergers after the US Airways and American Airlines Merger, 79 J.
    Air L. & Com. 781 (2014) https://scholar.smu.edu/jalc/vol79/iss4/3 ....................................................2
FTC Press Release, "*FTC Approves Sycamore Partners II, L.P. Application to Sell 323 Family Dollar Stores to
    Dollar General*", April 27, 2017 ......................................................................................3
John Kwoka, Mergers, Merger Control, and Remedies: A Retrospective Analysis of U.S. Policy, MIT Press 2015 ...2
Kennet Burdicek, WellCare CEO, October 30, 2018, WellCare Earnings Call ............................................3
Letter from Diana Moss, President of American Antitrust Institute to the Department of Justice, Regarding
    *Competitive and Consumer Concerns Raised by the CVS-Aetna Merger* dated March 26, 2018. ......................16
Letter from Marilyn Singleton to the Department of Justice, September 21, 2018 ......................................16
*The Misuse and Abuse of the Tunney Act: The Adverse Consequences of the "Microsoft Fallacies*," 34 Loyola U.
    Chicago L. J. 749, 758 (2003)........................................................................................7

Topher Spiro, Maura Calsyn, and Meghan O'Toole, *Divestitures Will Not Maintain Competition in Medicare Advantage*, Center for American Progress (March 8, 2016) ..............................................................14

WellCare Earnings Call Transcript dated October 30, 2018 ..............................................................15

**RULES**

Fed R. Civ. P. 24(b) ..............................................................9, 11

**MEMORANDUM IN SUPPORT OF CONSUMER ACTION and U.S. PIRG'S
MOTION TO INTERVENE or in the alternative
<u>MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*</u>**

**INTEREST OF PROPOSED INTERVENOR/AMICUS CURIAE**

Consumer Action is a national non-profit organization that has worked to advance consumer literacy and protect consumer rights in many areas for over forty years.  The organization achieves its mission through several channels, from direct consumer education to issue-focused advocacy.

U.S. PIRG is a not for profit organization that advocates for the public interest, working to win concrete results on real problems that affect millions of lives, and standing up for the public against powerful interests when they push the other way. They employ grassroots organizing and direct advocacy for the public on many different issues including healthcare, preserving competition and protecting consumer welfare.

Consumer Action and U.S. PIRG will submit Comments pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16 ("Tunney Act"), to Plaintiff United States Department of Justice ("DOJ") and the Court explaining that the Proposed Final Judgment ("PFJ") is not in the public interest.  First, the PFJ raises numerous questions and concerns that the proposed divestiture will not restore competition in the individual Medicare Part D prescription drug plans (individual "PDP") markets.  Second, the DOJ narrowly drafted the Complaint and completely failed to identify the extensive competitive concerns raised by the merger "as to make a mockery of judicial power." *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 15 (D.D.C. 2007).  If CVS and Aetna are allowed to integrate, the integration will lead to higher prices, reduced services, and less choice for consumers and patients.

Consumer Action and U.S. PIRG's participation in this proceeding is further warranted by the fact the DOJ and Defendants are presumably in agreement that the Court's Tunney Act role should be restricted, and there is no current party to the action that has the incentive to argue against the DOJ's position.

Consumer Action U.S. PIRG submit this Motion to Intervene and in the alternative amicus brief to address the Court's concerns as stated in its Order to Show Cause dated December 3, 2018 and to provide further background and information to this Court as it determines whether the PFJ serves the public interest.

## INTRODUCTION

On October 10, 2018, the Department of Justice's Antitrust Division approved CVS Health Corporation's ("CVS Health") acquisition of Aetna, Inc. ("Aetna") on the condition that Aetna divest its standalone individual Medicare Part D prescription drug plans ("individual PDPs") to WellCare Health Plans, Inc. ("WellCare"). Accordingly, the DOJ's Complaint, Competitive Impact Statement ("CIS"), and the Proposed Final Judgement ("PFJ") only describe a divestiture of individual PDP contracts as well as associated conditions designed to help the divestiture buyer manage these contracts as a remedy to resolve competition concerns related to a horizontal overlap posed by the merger.

At the hearing on December 3, 2018, this Court questioned whether it should impose a hold separate order to prevent further consolidation of the acquisition pending its review of the DOJ action. We strongly support and ask the Court to impose this essential remedy. As we describe below the proposed remedy is wholly inadequate and inconsistent with Judge Bates' action in rejecting a similar remedy in the Aetna-Humana merger. The DOJ failed to secure any

remedy on the impact on health care and pharmacy markets, concerns expressed by major consumer groups and the California Department of Insurance.

The DOJ may argue that those concerns can be evaluated after it has considered the public comments under the Tunney Act and provides a response.  But that process can often take more than a year and at that point it will be incredibly difficult for this court to "unscramble the eggs."  Effectively waiting for the Tunney Act process may make this Court's review fundamentally a nullity.  Moreover, consumers will suffer ongoing harm during the Tunney Act process.

Consumers and this Court have good reason to question whether the divestiture in the PFJ is sufficient to preserve competition in the individual Medicare PDP markets.[1]  First, even when merger remedies are strong and include robust structural and behavioral provisions they often fail to restore competition.[2]  Structural remedies such as divestitures are inherently risky and flawed.  Remedies are uncertain and the government often cannot recognize all the obstacles to fully restoring competition.  Not surprisingly, the limited empirical evidence that exists suggests that structural remedies have often failed to prevent competitive harm.[3]  Consumers are paying higher prices in a number of industries because of failed merger remedies in the airline,[4] grocery

---

[1] Draft Comments from Consumer Action and U.S. PIRG to be submitted on December 17, 2018, attached as Exhibit 1.
[2] John Kwoka, Mergers, Merger Control, and Remedies: A Retrospective Analysis of U.S. Policy, MIT Press 2015.
[3] *Id.*

[4] Catherine A. Peterman, The Future of Airline Mergers after the US Airways and American Airlines Merger, 79 J. Air L. & Com. 781 (2014) https://scholar.smu.edu/jalc/vol79/iss4/3.

store,[5] dollar store,[6] and rental car industries.[7]  Some of the failures of these divestiture buyers were monumental, predictable, and unbelievably fast.  Small divestiture buyers of a package of assets instead of an existing standalone business entity are more likely to fail.  And for health insurance it is the same story.

There are numerous concerns and questions about whether this divestiture package is adequate and whether WellCare is an appropriate buyer:

- WellCare is substantially smaller than Aetna and lacks its economies of scope and scale, brand reputation and number of covered lives;[8]

- WellCare likely does not have to the capacity to handle such a large increase in covered lives (growing from about 1 million to 3 million covered lives);

- The divestiture includes only contracts with subscribers and the use of the Aetna name for one year.  These assets are fragile and CVS/Aetna will be in a prime position to steal back business soon after its obligations under the decree are completed;

---

[5] In 2015, the FTC approved Safeway's acquisition of Albertson's, a large grocery merger, on the condition that the merged company divest itself of 146 stores to Haggens, a small chain of 18 stores.  Within months, that small chain filed for bankruptcy and the merged company wound up buying back about 36 stores.  Ana Marum, *Failed divestiture: Albertsons is bidding on 36 Haggen stores, including some it used to own,* The Oregonian (Nov.10, 2015),  https://www.oregonlive.com/window-shop/index.ssf/2015/11/albertsons_bids_on_36_haggen_s.html.

[6] In 2015, the FTC conditioned Dollar Tree's acquisition of Family Dollar, a merger of dollar stores, on a divestiture of stores to Sycamore, a private equity firm.  The private equity buyer sold the assets to the other large national dollar store player, Dollar General, within 21 months.  FTC Press Release, "*FTC Approves Sycamore Partners II, L.P. Application to Sell 323 Family Dollar Stores to Dollar General*", April 27, 2017.

[7] In 2012, the FTC conditioned Hertz' acquisition of Dollar Thrifty on a divestiture of Advantage and other assets to a small rental car company, FSNA, backed by a private equity fund and Advantage buyer filed for bankruptcy within a year only to have some of the assets auctioned back to Hertz.  Bret Kendall, *How the FTC's Hertz Antitrust Fix Went Flat,* Wall Street Journal (Dec. 8, 2013),  https://www.wsj.com/articles/how-the-ftc8217s-hertz-antitrust-fix-went-flat-1386547951?ns=prod/accounts-wsj

[8] WellCare is much smaller than Aetna; as of December 31st, 2017 Aetna's total membership was 22.2 million and it had assets of $55.137 billion, and WellCare had 4,371 million members and assets of $8.364 billion. And WellCare's membership of individual PDPs has declined; from 1,392,000 in 2014 to 1,152,000 in 2017. Aetna Reports Fourth-Quarter and Full Year 2017 Results, January 30, 2018. *See* https://news.aetna.com/newsreleases/aetna-reports-fourth-quarter-and-full-year-2017-results/ and WellCare Health Plans, Inc. 2017 Annual Report (Form 10-K). U.S. Securities and Exchange Commission.
February 2018. https://www.sec.gov/Archives/edgar/data/1279363/000127936318000011/wcg-2017123110k.htm

- Even, WellCare's CEO Kenneth Burdick recognizes that keeping the membership it is acquiring from Aetna is a risk;[9]

- WellCare is acquiring the assets at a price significantly below their supposed value (approximately $45 per covered life);

- WellCare has failed as a divestiture buyer in the past.  WellCare was a divestiture buyer of 4,000 Medicare Advantage lives in two counties in Arizona when the DOJ approved Humana's acquisition of Arcadian in 2012.  Unfortunately, within two years, WellCare exited the market; and

- Finally, approval of this merger of over 2 million lives is inconsistent with Judge Bates decision in the Aetna/Humana merger to reject a smaller divestiture of 290,000 lives. [10]

Beyond the narrowly drafted complaint, the DOJ simply ignored all of the concerns raised by providers, physicians, pharmacists, and consumer groups.  The PFJ does not address harm to patients resulting from the vertical integration of the nation's largest retail pharmacy chain, one of the three largest PBMs, which combined control approximately 85% of the PBM market, and the nation's third largest health insurer.  Making matters worse, the DOJ also approved a similar vertical merger of Cigna, one of the nation's largest health insurers, and Express Scripts, one of the three largest PBMs in the nation.  So within a short period of time the healthcare industry has fundamentally changed as the three largest PBMs are all vertically integrated with health insurers.

CVS Health's acquisition of Aetna creates a large, vertically integrated PBM-insurer that operates in upstream and downstream markets featuring only a few meaningful rivals.  CVS Health's past history shows that it will use vertical integration to steer patients to its own pharmacies and mail order business so we can expect CVS to continue the same exclusionary

---

[9] Kennet Burdicek, WellCare CEO, October 30, 2018, WellCare Earnings Call.  "Therefore, we'll be working in 2019 to enhance our products and capabilities and filing bids in June of 2019 to preserve as much membership as possible with the new WellCare products in 2020."
[10] *United States v. Aetna, Inc*., Memorandum and Opinion Filed January 23, 2017 at p. 16 and 93.

conduct going forward.  The merged firm will have enhanced incentives to use its market

positions to disadvantage rival PBMs, independent pharmacies, physicians and rival health

insurers.  This will make it more difficult for new entrants with innovative business models to

compete.  New entrants will be forced to enter at multiple levels of the healthcare industry to

effectively compete.  Consumers will suffer through higher prices, lower quality, less innovation,

and less choice.  For these reasons, the California Commissioner of Insurance, major consumer

groups such as Consumer Reports and the American Antitrust Institute and the American

Medical Association, the nation's largest group of health care providers all stated the merger

should be blocked. [11]  The profound concerns over the approval of the merger were set out by the

American Antitrust Institute, the nation's leading antitrust advocacy group.  "If ever there were a

vertical merger that should have been challenged by antitrust enforcers, this would be it," said

AAI President, Diana Moss.

　　　　Undoubtedly, this Court has the authority to enter a hold separate order that would

maintain the status quo and prevent CVS from further integrating with Aetna while this Court

makes its public interest determination of whether the PFJ adequately resolves the competition

concerns presented by this merger.  A hold separate order is necessary because the DOJ has in

---

[11] Letter from Dave Jones, Insurance Commissioner of state of California, to the Department of Justice dated August 1, 2018 at http://www.insurance.ca.gov/0400-news/0100-press-releases/2018/upload/nr085LtrJonestoUSAGSessionsreCVS-AetnaMerger.pdf; Statement of George Slover, Senior Counsel of Consumer Union in Before the Subcommittee on Regulatory Reform, Commercial and Antirust Law Before the Subcommittee on Regulatory Reform, Commercial and Antitrust Law House Committee on the Judiciary on Competition in the Pharmaceutical Supply Chain: The Proposed Merger of CVS Health and Aetna, February 27, 2018 at https://judiciary.house.gov/wp-content/uploads/2018/02/Slover-Testimony.pdf; Letter from Diana Moss, President of American Antitrust Institute to the Department of Justice, Regarding *Competitive and Consumer Concerns Raised by the CVS-Aetna Merger* dated March 26, 2018;  American Medical Association Press Release, *AMA urges DOJ to challenge CVS-Aetna merger,* August 8, 2018 at https://www.ama-assn.org/press-center/press-releases/ama-urges-doj-challenge-cvs-aetna-merger.
.

the recent past taken over a year to respond to Tunney Act comments[12]  If the Court were to

determine that the PFJ is not in the public interest down the line, it would be too late and difficult

for the DOJ to unwind the merger.  Not only would it be difficult to unscramble the eggs, there

may be few eggs to unscramble. Without a hold separate order, this Court's review of the

consent decree becomes a nullity and the DOJ gets the rubber stamp it desires.

## ARGUMENT

## I.     THE COURT MUST DETERMINE WHETHER THE PROPOSED FINAL JUDGMENT IS IN THE PUBLIC INTEREST

The Tunney Act directs the Court to determine whether the PFJ is "in the public interest."

15 U.S.C. §16(e)(1).  In making that determination, the court, in accordance with the statute as

amended in 2004, is required to consider:

> (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A) & (B).  This Court's inquiry has to be "formed by consideration of the

factors enumerated in the statute, which require the Court to evaluate both 'the competitive impact

of the proposed remedies, *i.e.*, how well the settlement remedies the harms alleged in the

---

[12] *U.S v. Anheuser-Busch InBev SA/NV and SABMiller PLC,* CA No. 1:16-cv-1483 (October 22, 2018).  The DOJ took over a year to respond to public comments.  The public comment deadline was October 4, 2016 and the DOJ did not respond to comments until January 13, 2017.

complaint[],' as well as 'issues unrelated to the competitive impact of the settlement.'" *United States v. AT&T Inc.*, 541 F. Supp. 2d 2, 6 (D.D.C. 2008) (quoting *United States v. SBC Commc'ns, Inc. et al.*, 489 F. Supp. 2d 1, 17 (D.D.C. 2007)).

The DOJ describes the Tunney Act's standard of review as a mere formality and expects the Court to simply rubber stamp its PFJ.  DOJ Status Report, at 3.  Here, the DOJ reports to the Court that the divestiture to WellCare of PDP contracts which was called for in the PFJ already occurred on November 30, 2018.  DOJ Status Report, at 2.  The DOJ also reports that it is not necessary to maintain the status quo or to keep CVS from integrating with Aetna because the only issue of concern to the Court has already been completed.  DOJ Status Report, at 2.  This has all been done even though the public's comment period does not end until December 17, 2018.

The DOJ's position is wrong and goes against the very language and purpose of the Tunney Act.  Under the Tunney Act, the court must act as "an independent check upon the terms negotiated by the DOJ." *United States v. Am. Tel. & Tel. Co.,* 552 F. Supp. 131, 149 (D.D.C. 1982).  The language of the Tunney Act and its legislative history contradict the government's argument for a sharply proscribed, highly deferential review.  Moreover, Congress enacted the Tunney Act to eliminate excessive secrecy from the consent decree process and address its perception that the DOJ entered into a number of weak settlements.  *See United States v. Airline Tariff Pub. Co.,* 836 F. Supp. 9, 11 (D.D.C. 1993); *United States v. Blavatnik*, No. CV 15-1631 (RDM), 2016 WL 593449, at *7 (D.D.C. Feb. 12, 2016).[13]

---

[13] "In enacting the Tunney Act, Congress sought to ensure that the Justice Department's use of consent decrees in antitrust cases would fully promote the goals of the antitrust laws and foster public confidence in their fair enforcement.  The legislators found that prior practice, which gave the Department almost total control of the consent decree process, with only minimal judicial oversight, failed to accomplish these ends." *AT&T Co.,* 552 F. Supp. at 148.

This Court has the power to maintain the status quo while it makes its public interest determination.[14]  This very Court refused to sign a PFJ granting approval for a Comcast and NBC Universal merger when it was determined that the binding arbitration provisions were not in the public interest.  *See United States. v. Comcast Corp.*, 808 F. Supp. 2d 145 (D.D.C. 2011).  This Court demonstrated a commitment to taking the Tunney Act seriously and inquiring whether a PFJ was in the public interest.

It makes no difference that CVS and Aetna consummated the merger and Aetna already sold the individual PDPs to WellCare.  The parties entered into those agreements knowing that the district court has the responsibility of making the public interest determination on the PFJ so they did so at their own risk.  Nothing is complete until this Court enters a Final Judgment.  Moreover, the Ninth Circuit has explained that district courts have the power to maintain the status quo while determining whether a proposed consent decree is in the public interest. *United States v. BNS, Inc.*, 858 F.2d 456, 461-62 (9th Cir. 1988).  The Ninth Circuit's position makes sense because this Court's ability to make a public interest determination on a consent decree on a merger matter would otherwise be undermined.  *Id.* at 461-62.  Accordingly, the Court is not obliged to become a "rubber stamp" merely because DOJ and the parties have gone ahead without its approval.

Congress gave federal courts broad leeway to make sure the PFJ is in the public interest including:

1) taking testimony of Government officials or experts or such other expert witnesses, upon motion of any party or participant or upon its own motion, as the court may deem appropriate;

---

[14] In amending the Tunney Act, Congress criticized some of the case law that has limited the district court's role in Tunney Act proceedings as "contrary to the intent of the Tunney Act and effectively strips the courts of the ability to engage in meaningful review of antitrust settlements." 150 Cong. Rec. S3615 (Apr. 2, 2004). The DOJ ignores how Congress "wanted the courts to make an independent, objective, and active determination" without undue deference to DOJ. 150 Cong. Rec. S3617 (Apr. 2, 2004) (quoting John J. Flynn and Darren Bush, *The Misuse and Abuse of the Tunney Act: The Adverse Consequences of the "Microsoft Fallacies*," 34 Loyola U. Chicago L. J. 749, 758 (2003)).

2)  appointing a special master and such outside consultants or expert witnesses as the court may deem appropriate; and requesting and obtaining the views, evaluations, or advice of any individual, group or agency of government with respect to any aspects of the proposed judgment or the effect of such judgment, in such manner as the court deems appropriate;

3)  authorizing full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate;

4)  reviewing any comments including any objections filed with the United States under subsection (d) concerning the proposed judgment and the responses of the United States to such comments and objections; and

5)  taking such other action in the public interest as the court may deem appropriate. 15 U.S.C. § 16.

Indeed, the Tunney Act allows for the court to issue a hold separate order to prevent CVS from further integrating with Aetna until the Court has had the opportunity to hold hearings and take testimony from government witnesses and interested persons to determine whether the PFJ is in the public interest.  This Court is required to make an independent, objective, "determination of whether a proposed settlement is in the public interest."  *AT&T Inc*., 541 F. Supp. 2d at 6.  It is important to maintain the status quo while the Court is making its determination because Tunney Act proceedings take a long time.  For example, the Tunney Act proceeding in *U.S v. Anheuser-Busch InBev SA/NV and SABMiller PLC,* CA No. 1:16-cv-1483 (October 22, 2018) took two years and three months to be completed.  The DOJ filed its complaint on July 20, 2016; filed responses to public comments on January 13, 2017 responded to by amicus briefs; filed a motion to enter a final judgment on September 15, 2017, filed a motion to enter a modified final judgment on March 15, 2018 responded to by amicus briefs; and

10

the Court entered the modified order on October 22, 2018.[15]  Therefore, for the Tunney Act

proceeding to be meaningful, the Court needs to maintain the status quo, otherwise, it would be

too difficult to unscramble the eggs later.

## II.   CONSUMER ACTION AND U.S. PIRG SHOULD BE GRANTED PERMISSIVE INTERVENTION TO ASSIST THE COURT IN MAKING ITS PUBLIC INTEREST DETERMINATION

In order to assist the Court in making its public interest determination, Consumer Action

and U.S. PIRG should be granted permissive intervention pursuant to Rule 24(b) of the Federal

Rules of Civil Procedure. Rule 24(b) states:

> [u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Fed R. Civ. P. 24(b). Permissive intervention is granted upon a showing of timeliness and the

applicant's claim or defense sharing a question of law or fact with the main action.  Fed. R. Civ.

P. 24(b)(2). "In exercising its discretion the court shall consider whether the intervention will

unduly delay or prejudice the adjudication of the rights of the original parties." *Id*.  The Tunney

Act also makes clear the Court may allow intervention in antitrust consent decree matters to

assist in its public interest determination. 15 U.S.C. § 16(f)(3).

### A.   Consumer Action and U.S. PIRG's Motion is Timely and Will Not Unduly Delay or Prejudice the Adjudication of the Rights of the Original Parties.

Courts determine whether a motion to intervene is timely based on an assessment of the

surrounding circumstances. *Nat. Ass'n for Advancement of Colored People v. New York*, 413

U.S. 345, 366 (1973).  Among the circumstances considered are the purposes for which

---

[15] https://www.justice.gov/atr/case/us-v-anheuser-busch-inbev-sanv-and-sabmiller-plc; *U.S., et al. v. US Airways Group, Inc. and AMR Corporation*, 1:13-cv-01236 (April 25, 2014 Final Judgment).  The Tunney Act proceeding took more than one year to complete.

intervention is sought, the necessity of intervention as a means of preserving the applicant's rights, and the improbability of prejudice to those already in the case. *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972).

The D.C. Circuit has held that a motion to intervene is timely if made soon after it becomes reasonable to expect inadequate representation by the United States. *United States v. AT&T Co.*, 642 F.2d 1285, 1294-95 (D.C. Cir. 1980). This motion to intervene is timely because the DOJ filed its Complaint just over two months ago, the PFJ itself is severely inadequate to correct the anticompetitive concerns alleged in the Complaint, and the DOJ has cavalierly allowed CVS and Aetna to begin merging their operations before the period for public comment is even complete. *Id.* The present case is about the DOJ's inadequate PFJ that fails to remedy the competitive harm described in its Complaint and the wide ranging vertical foreclosure concerns raised by this merger.

Consumer Action and U.S. PIRG seek limited intervention to address the PFJ's severe inadequacies before it is finalized. *See Smuck v. Hobson*, 408 F.2d 175, 181-82 (D.C. Cir. 1969) (intervention was timely even when made after the final judgment). Consumer Action and U.S. PIRG's request for intervention is timely as it is being submitted to the Court after an opportunity to review the PFJ, but prior to the end of the public comment period and the Court's review of whether the PFJ is in the public interest. Furthermore, the limited scope of Consumer Action and U.S. PIRG's request to submit a response to the Court's December 3, 2018 Show Cause Order, to submit a response to the DOJ's response to their comments and to participate in (or seek) hearings ensures that this limited intervention will not result in undue delay. Therefore, this motion to intervene is timely and prevents undue delay and prejudice to the existing parties.

**B.** **Consumer Action and U.S. PIRG Have Claims that Share a Question of Law or Fact with the Main Action.**

Rule 24(b)(2) gives the court discretion to grant intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). "Claim[s]" refers "to the kinds of claims ... that can be raised in courts of law as part of an actual or impending law suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring). [16]   The D.C. Circuit "eschew[s] strict readings of the phrase 'claims or defense,' allowing intervention even in 'situations where the existence of any nominate "claim" or "defense" is difficult to find,'" preferring a broad, liberal reading of "claim and defense" so as not to preclude permissive intervention. *Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (quoting *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967)); see also *Textile Workers Union of Am., CIO v. Allendale Co.,* 226 F.2d 765, 768 (D.C. Cir. 1955) ("failure to come within the precise bounds of Rule 24's provisions does not necessarily bar intervention if there is a sound reason to allow it.").

Consumer Action and U.S. PIRG claims clearly share a question of law and fact with the claims and defenses in this case.  Consumer Action and U.S. PIRG claim that the remedies

---

[16] A motion to intervene, filed without a pleading should not be considered a reason to deny Consumer Action and U.S. PIRG's present motion to intervene.  Under *Massachusetts v. Microsoft*, 373 F.3d 1199, 1236 n. 19 (D.C. Cir. 2004), the D.C. Circuit questioned whether the failure to file a pleading with a motion to intervene constitutes a defect and holds that even if it is a defect, that is "no reason to bar intervention" because "procedural defects in connection with intervention motions should generally be excused by a court." *Id*. This comports with the law of several jurisdictions.  *See, e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009); *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) ("Statement of Interest" provided sufficient notice and thereby satisfied requirement); *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005) (abuse of discretion to reject motion to intervene for failure to include pleading); *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985) (noting majority of circuits will not deny intervention because of "nonprejudicial technical defects"); *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). Consumer Action and U.S. PIRG have a significant interest in the outcome of the matter and therefore "claims an interest" under Fed. R. Civ. P. 24(a) in the subject-matter of this litigation, which is sufficient to justify intervention even without an independent cause of action or defense.  Fed. R. Civ. P. 24(a) does not require that the proposed intervener have a "cause of action," only an interest. *U.S. v. Philip Morris USA, Inc.*, No. 99-2496, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005).

proposed in the PFJ are grossly inadequate to remedy the anticompetitive harms alleged in the Complaint and that the PFJ does not remedy the vertical foreclosure concerns presented by the merger.  Thus, the main question of law and fact raised by Consumer Action and U.S. PIRG is the same as that already at issue here: will the proposed remedies ensure against the harm to competition in the individual Medicare Part D prescription drug plan market caused by these mergers?[17]

## III.   THIS COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER THE PFJ IS IN THE PUBLIC INTEREST

To ensure that a consent decree is in the public interest, Congress gave the district court broad power. This Court, on its own motion, can take testimony of government officials or experts or any other expert witness (as this Court may deem appropriate); obtain the views, evaluations, or advice of any individual, group or governmental agency with respect to any aspects of the proposed judgment or the effect of such judgment; or take any other action in the public interest as this Court may deem appropriate.[18] 15 U.S.C. § 16(f). To comply with the Tunney Act, the Court should have the opportunity to explore the "competitive considerations" presented by the merger including an examination of DOJ's past and present statements about competition in the health insurance industry, its past enforcement decisions in the health insurance industry, its own statements of enforcement policy, and independent economic analysis of the competitive effects arising from past health insurance mergers and failed remedies. Competitive considerations are particularly relevant as the DOJ has alleged that the Medicare Part D PDP markets are highly concentrated and have high entry

---

[17] Consumer Action and U.S. PIRG represent of customers and beneficiaries of Defendants' services, have standing to bring Sherman Act Section 7 cases against the merging parties. The Clayton Act gives private parties standing to assert a Section 7 claim. 15 U.S.C. § 26 (allowing any person, firm, corporation, or association to sue for injunctive relief against threatened loss or damage by a violation of federal antitrust laws).

[18]  If the Court holds a hearing, we would be prepared to present expert testimony on the inadequacy of the remedy.

14

barriers and the DOJ has totally ignored the vertical foreclosure concerns raised by pharmacists, physicians, and consumers. For its review to be meaningful, the Court should enter a hold separate order preventing CVS from integrating with Aetna until the Court determines whether the PFJ is in the public interest.

Moreover, Congress believed that commentators can play a vital role in the Tunney Act process: "The increasing expertise of so-called public interest advocates and for that matter the more immediate concern of a defendant's competitors, employees, or antitrust victims may well serve to provide additional data, analysis, or alternatives which would improve the outcome." *AT&T Co.*, 552 F. Supp. at 148 n. 70 (quoting 119 Cong. Rec. 3452 (1973) (Sen. Tunney)).  Third parties can help explain to the Court how the PFJ is deficient to protect against the very harms the DOJ purports to be concerned with in its Competitive Impact Statement, i.e. "increased premiums and increased out-of-pocket costs paid by Medicare beneficiaries, higher subsidies paid by the federal government (and ultimately, taxpayers), and a lessening of service quality and innovation."  Competitive Impact Statement at 2.

Past experience can help us predict what may happen in the future.  Divestitures in the health insurance industry have proven to be risky so this Court should hold hearings to determine if the divestiture in the PFJ to WellCare will preserve competition in the individual Medicare Part D PDP markets.  The Court needs to conduct a deep dive to determine what WellCare is actually receiving from Aetna.  Is WellCare getting the infrastructure of an ongoing business?  Is WellCare acquiring an exclusive license of a well-known brand name? Is WellCare getting provider and broker contracts?  Is WellCare getting all of the necessary employees? Is WellCare getting physical locations?

As described in our comments, just two years ago, Judge Bates held that Molina Healthcare's ("Molina") acquisition of divested Medicare Advantage plans related to Aetna's

merger with Humana was insufficient to restore competition in Medicare Advantage markets. Judge Bates made that decision based on a number of factors. First, contemporaneously prepared business documents from Molina's Board and executives undermined the argument that Molina could successfully compete with the divestiture assets.[19] Second, Judge Bates was very concerned that the low purchase price that Molina paid for the Medicare Advantage contracts raised concerns about whether Molina would preserve competition in all of the problem markets.[20] He was concerned that because Molina was getting such a great deal it could make money and be profitable even if it abandoned many of the plans, counties, and members that it was to acquire.[21] Third, Judge Bates was concerned about Molina's history demonstrating that it was unsuccessful in entering the Medicare Advantage space.[22] In summary, Judge Bates concluded that Molina's past history suggested that the company was an inappropriate divestiture buyer.

WellCare's checkered history as a divestiture buyer should also raise the Court's eyebrows. The DOJ's divestiture remedy in 2012 that allowed Humana to acquire Arcadian failed to restore competition in Medicare Advantage markets.[23] WellCare, one of the divestiture buyers in Humana/Arcadian, exited the business within two years of making the acquisition.[24] WellCare purchased Arcadian's Medicare Advantage business, which covered about 4,000 members in two counties in Arizona at the beginning of 2013.[25] By all accounts, the DOJ believed WellCare to be a strong buyer because it was already offering Medicare Advantage

---

[19] *United States v. Aetna, Inc.*, Memorandum and Opinion Filed January 23, 2017 at 105-106.
[20] *Id.* at 110-111.
[21] *Id.* at 110-111.
[22] *Id.* at 111-112.
[23] Topher Spiro, Maura Calsyn, and Meghan O'Toole, *Divestitures Will Not Maintain Competition in Medicare Advantage*, Center for American Progress (March 8, 2016).
[24] *Id.*
[25] *Id.* at 3.

plans in 12 states. WellCare's exit allowed Humana to increase its share in those two counties.[26] The Court might want to question the DOJ and WellCare about what actually happened and why should the Court trust that WellCare will do better this time.  The Court will certainly want to understand why the DOJ did not require a divestiture of an ongoing business and why it simply settled for the divestiture of contracts with subscribers.  Significantly, health insurer relationships with subscribers are fragile assets on which to base a merger remedy.

Indeed, WellCare's CEO stated on its earnings call that preserving the membership that it is acquiring is certainly a risk and that WellCare will try to preserve it.[27]  He also stated that he was happy to be able to help out its partner CVS.[28]  The Court may want to ask how WellCare will preserve the membership and about its relationship with CVS.

As this court confirmed in *SBC Communications*, courts "cannot look beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 15 (D.D.C. 2007).  Here, the DOJ narrowly drafted the Complaint and completely failed to identify the extensive competitive concerns raised by the merger.  This Court should dig deeper and allow third parties an opportunity to participate so that they can explain the vertical foreclosure concerns that exist.

As further stated in our comments, CVS's history suggests that it will continue to engage in exclusionary conduct to steer patients away from rivals.  The acquisition of Aetna enhances the ability and incentive of the merged firm to impede competition in retail pharmacy, provider services, health insurance, and PBM services. Pre-merger, Aetna has the incentive to deal with

---

[26] *Id.*
[27] WellCare Earnings Call Transcript dated October 30, 2018. https://seekingalpha.com/article/4215999-wellcare-health-plans-wcg-q3-2018-results-earnings-call-transcript?page=2
[28] *Id.*

all retail pharmacies for its commercial insureds.  Post-merger, this will change as CVS/Aetna will have the increased incentive and ability to steer Aetna's patients to CVS's mail order business or its retail pharmacy stores.  CVS will be able to cut off rival retail pharmacies' access to Aetna insureds by implementing some changes either explicitly requiring the Aetna insureds to use CVS mail order and/or retail pharmacies or implementing financial disincentives to Aetna insureds from using rival retail pharmacies.  Primary care physicians are also at risk of being squeezed out of the marketplace to the detriment of patients.[29]  CVS will be able to steer patients covered by Aetna to receive their care from CVS-run clinics, instead of from their own physicians.[30]  Further, while a standalone CVS has strong incentives to sell its PBM services to all health insurers, after integrating with Aetna, the incentive to sell such services to other health insurers changes.[31]  Given the significance of being one of three largest PBMs, CVS could enact a number of strategies related to drug formularies, providing less transparency of drug costs, and gathering information about rival insurers' drug spending and customers that could be used to disadvantage health insurer rivals.[32]  This could raise rival health insurers' cost of prescription drugs.  Finally, CVS could cut off Aetna subscribers from rival PBMs.

In sum, patients will see higher prescription drug prices, lower quality, and less choice. This merger will unquestionably result in CVS steering patients to its services and products and away from competitors' offerings.

---

[29]  Letter from Marilyn Singleton to the Department of Justice, September 21, 2018.  http://aapsonline.org/cvs-aetna/.
[30] *Id*.
[31] Letter from Diana Moss, President of American Antitrust Institute to the Department of Justice, Regarding *Competitive and Consumer Concerns Raised by the CVS-Aetna Merger* dated March 26, 2018.
[32]*Id*.

## CONCLUSION

This Court should not simply rubber stamp an approval of the PFJ because the divestiture to WellCare is unlikely to preserve competition in the Medicare individual PDP markets. Indeed, this Court has the authority and responsibility to conduct a thorough review of the PFJ to determine whether it is in the public interest and fully restores competition for millions of patients.  Accordingly, this Court should require an open and public hearing so it can conduct additional fact-finding necessary to carefully consider the PFJ in light of the number of concerns raised in this brief and the sweeping competitive concerns that the DOJ glossed over in its investigation.  Such a hearing would fully develop the record regarding the potential areas of failure in the PFJ before the Court makes its decision on whether the PFJ adequately resolves the competitive harm raised by the merger.  Finally, this Court should enter a hold separate order to prevent CVS from integrating with Aetna while it conducts its public interest determination because if the Court determines that the PFJ is not in the public interest at some later time, it will be impossible to undo the merger.

Dated: December 14, 2018

Respectfully submitted,

/s David Balto
 **David A. Balto**
Attorney at Law
8030 Ellingson Drive
Chevy Chase, MD
20815
(202) 577-5424
Email: david.balto@dcantitrustlaw.com
*Attorney for Consumer Action and U.S. PIRG*