IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        Plaintiffs,<br>  v.<br><br>CVS HEALTH CORPORATION; and<br>AETNA INC.,<br><br>        Defendants. | Civil Action No. 1:18-cv-02340-RJL<br><br>**Hon. Richard J. Leon** |

**CVS HEALTH CORPORATION'S OPPOSITION
TO MOTIONS FOR LEAVE TO INTERVENE**

Defendant CVS opposes the motions for leave to intervene by (1) Pharmacists United for Truth and Transparency ("PUTT") and Pharmacists Society of the State of New York, Inc. ("PSSNY") and (2) Consumer Action and U.S. PIRG (together, "Movants"). The motions should be denied because Movants do not satisfy the standards for permissive intervention as set forth in Federal Rule of Civil Procedure 24(b) and applicable case law, as explained below and in the United States' opposition memorandum. *See Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 780 n.2 (D.C. Cir. 1997) ("The Tunney Act looks entirely to [Rule] 24 to supply the legal standard for intervention.").

CVS does not oppose Movants' alternative request to participate as amicus curiae. That said, both intervention and amicus status are wholly unnecessary to the Court's public interest determination, for which the public comment procedures of the Tunney Act more than suffice. *See* 15 U.S.C. § 16(f); *see also United States v. Verizon Commc'ns, Inc.*, 959 F. Supp. 2d 55, 59 n.3 (D.D.C. 2013) ("A court can make its public interest determination based on the competitive impact statement and response to public comments alone."); *United States v. AT&T Co.*, Civ. No. 74-1698, 1982 WL 1820, at *2 (D.D.C. Mar. 25, 1982) (denying motions to intervene without

foreclosing possibility that interested groups could later file appropriate substantive and procedural proposals to the court).[1]  In any event, any interest Movants have in addressing the Court beyond the ordinary Tunney Act comment process can be fully vindicated through amicus filings, without permitting every member of the public who wishes to be heard to intervene and become a party to this case.

## ARGUMENT

A party seeking permissive intervention must show that it "has a claim or defense that shares with the main action a common question of law or fact," and that the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B), (b)(3).  Even when these elements are met (and they are not here), the Court has discretion whether to allow the movant to intervene.

1. Movants do not satisfy Rule 24(b)(1)(B) because they do not advance "a claim or defense that shares a question of law or fact" with the claims at issue in these proceedings.  They make no "assertion . . . of a cognizable claim," *i.e.*, one "that can be raised in courts of law as part of an actual or impending lawsuit."  *United States v. Microsoft Corp.*, No. CIV.A.98-1232(CKK), 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002).  In the typical case, a Tunney Act intervenor may present an overlapping issue because it has brought "its own antitrust suit challenging the same antitrust harm pursued by the government."  *United States v. SBC Commc'ns, Inc.*, No. CIV.A.05 2102(EGS), 2007 WL 1830866, at *1 (D.D.C. June 26, 2007).  Movants here have filed no such suit.  Assuming *arguendo* that a party may be permitted to

---

[1] Amicus participation led to a deluge of filings in *United States v. US Airways Group and AMR Corporation*, prompting Judge Kollar-Kotelly to issue an order instructing amici to instead use the public comment procedures for making their concerns known.  *See United States v. US Airways Grp. & AMR Corp.*, Civ. No. 13-01236(CKK) (D.D.C. Nov. 13, 2013).

intervene if it presents "arguments against the final judgments that were squarely within the scope of the Tunney Act proceedings," as Judge Sullivan posited in *SBC Communications*, *id.*, Movants do not satisfy that standard either.  Rather, in focusing on issues outside the subject matter of the Complaint, they improperly seek to expand the scope of the proceedings by urging this Court to "reach beyond the complaint to evaluate claims that the government did not make and to inquire as to why they were not made." *United States v. Imetal*, No. CIV.A.99-1018(GK), 2000 WL 33115570, at *1 (D.D.C. May 26, 2000) (denying motion for leave to intervene and, in the alternative, to file an amicus brief).

2.  Movants' request to intervene should be viewed with particular skepticism because they are competitors to the merging parties, and as such, their opposition to the merger "reflects self-interest rather than genuine concerns about harm to competition." *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 211 (D.D.C 2018).[2]  Movants PUTT and PSSNY represent interests implicated not by alleged anticompetitive harm arising from the merger, but by the increased competitive pressure that the transaction is expected to create for their membership[3]—

---

[2] In 2016, the average independent pharmacy reported profit margins of 22.1 percent, a "healthy profit" that is "among the highest of any industry"—outpacing "accountants, legal services, and even physicians." *Is Owning a Pharmacy Profitable?*, Elements Mag. (Aug. 29, 2018), https://www.pbahealth.com/is-owning-a-pharmacy-profitable.  Despite unsubstantiated claims that these profitable pharmacies are disappearing, a study funded by the National Institute of Health found that the number of independent pharmacies has risen over the past several years. *The Availability of Pharmacies in the United States: 2007-2015*, U.S. Nat'l Library of Medicine (Aug. 16, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5559230 (finding that the number of independent pharmacies increased from 20,844 in 2008 to 23,596 in 2015). Independent retail pharmacies have maintained their growth and profitability by forming buying groups of thousands of pharmacies to ensure cost competitive drug procurement and operations. *McKesson Leads Another Round of PSAO Consolidation*, Drug Channels, Apr. 17, 2018, https://www.drugchannels.net/2018/04/mckesson-leads-another-round-of-psao.html ("Nearly all smaller pharmacies participate in [buying groups] to leverage their influence in contract negotiations with PBMs and other third-party payers.").

[3] For example, in testimony about the merger to the New York Department of Financial Services, PSSNY stated, "As this integration moves forward local pharmacies may no longer be able to

which is composed primarily of retail pharmacists who compete with CVS retail pharmacies for customers and with CVS Caremark's mail-order prescription services.[4] As for Consumer Action and U.S. PIRG, these are public interest groups with no apparent connection to the healthcare system and the pharmaceutical supply chain.[5] That cannot be said for their counsel, David Balto, who serves as general counsel of the Independent Specialty Pharmacy Coalition[6] and as counsel to the National Community Pharmacists Association—organizations whose members compete with CVS's specialty pharmacies and have lobbied for regulatory restrictions on access to mail-order pharmacy services.[7] Movants' vaguely stated interest in opposing the merger is not a basis for intervention.

3.  In addition, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Such

---

compete with another large, integrated pharmacy benefit manager/insurer system." PSSNY Presentation to N.Y. Dep't of Fin. Servs. Public Hearing ("PSSNY Presentation") at 2 (Oct. 18, 2018), https://bit.ly/2QAaZDi.  In a letter to this Court, PUTT likewise stated that its "fear" is competing for patients against the "seemingly better financial incentives" that CVS is able to offer as a result of the merger. *PUTT's Letter to Judge Richard Leon re: Blocking the CVS Aetna Merger* (Dec. 14, 2018), https://bit.ly/2rEzSPy.

[4] *See* Pharmacists United for Truth and Transparency, *Meet PUTT*, https://www.truthrx.org/about.html ("[PUTT] is a non-profit advocacy organization founded by independent pharmacists and pharmacy owners"); PSSNY Presentation at 2 ("The vast majority of [PSSYN] members work in community pharmacy and a significant number of them are pharmacy owners.").

[5] *See* Consumer Action, *What We Do*, https://bit.ly/2SRTCLc; U.S. PIRG, *About U.S. PIRG*, https://bit.ly/2PEBUsv.

[6] *See* Independent Specialty Pharmacy Coalition, http://www.ispcoalition.org/about-us.html.

[7] Both sets of Movants also rely heavily on the American Antitrust Institute (AAI), a self-described "independent" group funded and overseen not by consumers but largely by plaintiffs' lawyers. *See* American Antitrust Inst., 2018 Annual Sponsors, https://antitrustinstitute.org/content/2018-sponsors; American Antitrust Inst., Board of Directors, https://antitrustinstitute.org/people/board-of-directors.

delay and prejudice would inevitably arise out of the addition of Movants as party-intervenors, "given the complexity of proceedings in this case." *United States v. Microsoft Corp.*, No. CIV.A.98-1232(CKK), 2002 WL 319366, at *1 (D.D.C. Feb. 28, 2002).  Although Movants allege that they seek to intervene for "limited purposes," this assertion is at odds with their request for evidentiary hearings to probe the propriety of the Complaint's scope.  In any event, "participation as a party is not necessary" to their described purposes because the Tunney Act's public comment process already fully enables Movants to express their views on the merger. *United States v. Thomson Corp.*, Civ. No. 96-1415(PLF), 1996 WL 554557, at *3 (D.D.C. Sept. 25, 1996) (denying competitor leave to intervene in a Tunney Act proceeding); *see also United States v. InBev N.V./S.A., et al.*, Civ. No. 08-1965(JR) (D.D.C. Feb. 3, 2009) (denying motion to intervene because movants "will have ample opportunity to place their objections . . . on the public record as part of the Tunney Act proceedings that are now underway").

4.   Even if Movants satisfied the requirements of Rule 24(b), intervention would be inappropriate here as a matter of the Court's discretion.  *See United States v. W. Elec. Co.*, 969 F.2d 1231, 1247 (D.C. Cir. 1992).  Courts usually deny discretionary intervention under the Tunney Act "in the absence of a showing that the government is not vigorously and faithfully representing the public interest, that it was unduly influenced or that it exercised bad faith or malfeasance in reaching the proposed final judgment." *Thomson Corp.*, 1996 WL 554557, at *2 (citing *United States v. LTV Corp.*, 746 F.2d 51, 54 & n.7 (D.C. Cir. 1984); *United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 649–50 (D. Del. 1983)).  "Not only would any other rule render a public interest proceeding completely unmanageable, but the comment procedures, together with the subsequent public interest proceedings, provide ample protection for all

legitimate interests." *United States v. AT&T Co.*, Civ. No. 74-1698, 1982 WL 1804, at *1 (D.D.C. Feb. 5, 1982).

For the foregoing reasons, the Court should deny Movants' Motions for Leave to Intervene.

Dated:  December 17, 2018

Respectfully submitted,

*/s/* Michael G. Cowie

Michael G. Cowie
Rani A. Habash
Michael H. McGinley
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel.:  (202) 261-3300
Fax:  (202) 261-3333
Email: mike.cowie@dechert.com

Enu A. Mainigi
Craig D. Singer
Jonathan B. Pitt
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Tel.:  (202) 434-5000
Fax:  (202) 434-5029
Email: emainigi@wc.com

*Counsel for CVS Health Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on December 17, 2018, I caused a copy of the foregoing document to be served electronically on all counsel of record via operation of the Court's CM/ECF system.

By: /s/ Michael G. Cowie
Michael G. Cowie