# DOYLE, BARLOW & MAZARD PLLC
### ATTORNEYS AT LAW

1110 VERMONT AVE, N.W.
SUITE 715
WASHINGTON, D.C. 20005-3314

202-589-1834
FAX 202-589-1819
www.dbmlawgroup.com

December 20, 2018

Honorable Richard J. Leon
Senior Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, D.C. 20001

Re:   *United States v. CVS Health Corp.*, No. 1:18-cv-02340 (RJL)

Dear Judge Leon:

On behalf of *amici curiae*, Pharmacists United for Truth and Transparency ("PUTT") and Pharmacists Society of the State of New York, Inc. ("PSSNY"), we respectfully request leave to file this supplemental letter for the limited purpose of providing some thoughts on CVS Health's ("CVS") proposal to the Court to take steps to keep CVS and Aetna Inc. ("Aetna") separate during the Court's Tunney Act review and how to structure the proposed firewall.

PUTT and PSSNY support the Court's consideration of CVS' proposal to keep CVS and Aetna separate while the Court conducts its determination of whether the proposed Final Judgment is in the public interest, as required by the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16. Maintaining the status quo for the entirety of the Tunney Act proceeding is necessary for the Court's review to be meaningful. Getting the terms right is important because these proceedings can take a very long time when there are a number of third parties participating. Indeed, Judge Emmet Sullivan just recently presided over a Tunney Act proceeding that took 27 months from the filing of the complaint to the entering of the Final Judgment.[1]

Here, CVS has indicated that it is willing to take the following actions concerning Aetna's business so that a broad hold separate order would not be necessary:

1. Aetna's health insurance business is being operated as a separate and distinct unit from CVS retail pharmacy and pharmacy benefit manager CVS Caremark within the CVS Health enterprise. Karen Lynch, formerly Aetna's President

---

[1] *U.S v. Anheuser-Busch InBev SA/NV and SABMiller PLC*, 1:16-cv-1483 (October 22, 2018 Order). The complaint was filed on July 20, 2016. I served as counsel for amici, Consumer Watchdog and Consumer Action.

and currently an Executive Vice President of CVS Health, is leading this business and reports directly to the CEO.

2. Aetna will maintain its historical control over the pricing and product offerings brought to market.

3. Aetna personnel will retain their current compensation and benefits.

4. CVS Health has and will maintain a firewall to prevent the exchange of competitively sensitive information between CVS Health and Aetna.[2]

PUTT and PSSNY are supportive of the proposal, however, PUTT and PSSNY have some reservations to which they desire to alert the Court concerning the firewall based on past problems that community and independent pharmacists have experienced with CVS. After CVS and Caremark, the pharmacy benefit manager ("PBM") arm, merged in 2007, CVS designed a firewall to ensure that Caremark and CVS did not share "certain competitively sensitive information".[3] Post-merger, there were allegations that Caremark used its PBM business to steer customers to CVS retail pharmacies.[4] Through the merger, CVS obtained competitively sensitive information of non-CVS pharmacies including the identity of their customers and prescribers, the drugs prescribed, the cost of the drugs, the amount of the drugs acquired, the drug acquisition cost, and the reimbursement amount.[5] Non-CVS pharmacists believe that Caremark shared its patient data with CVS's pharmacy arm and used the information to steer customers toward CVS pharmacies by directly informing the patients who use non-CVS pharmacies of the risks of using multiple pharmacies and urging them to consolidate all of their prescription drug purchases through CVS or pay an increased copay.[6] These concerns still exist today.[7] This type of conduct could also happen to other medical providers and their patients as well.

---

[2] CVS Health Corporation's Memorandum In Response to the Court's December 3, 2018 Order to Show Cause at 16 (Dkt. 33).

[3] Reed Abelson and Natasha Singer, *Pressure Grows to Unwind CVS Merger*, New York Times (April 14, 2011), available at https://www.nytimes.com/2011/04/15/business/15cvs.html.

[4] *See* Letter from Bruce T. Roberts, executive vice president and chief executive officer, National Community Pharmacists Association to FTC Chairman William Kovacic, December 23, 2008, available at http://www.ncpanet.org/pdf/leg/cvscaremarkncpaltr.pdf (outlining competition and privacy concerns).

[5] Letter from Holly Henry, president, National Community Pharmacists Association to FTC Chairman Jon Leibowitz; May 12, 2009, available at http://www.ncpanet.org/pdf/needftcinvestigation.pdf (citing potential violations of the Clayton and the FTC Act).

[6] See, letters from Roberts and Letter from Henry.

[7] Catherine Candisky, Darrel Rowland, and Marty Schladen, *Three CVS actions raise concerns for some pharmacies*, consumers, Columbia Dispatch (April 15, 2018), available at https://www.dispatch.com/news/20180415/three-cvs-actions-raise-concerns-for-some-pharmacies-consumers.

CVS states that it currently "has and will maintain a firewall to prevent the exchange of competitively sensitive information between CVS Health and Aetna."[8] CVS further states that this provision is analogous to what was done during the pendency of the Department of Justice's appeal of AT&T's acquisition of Time Warner.[9] However, the firewall in AT&T/Time Warner was more detailed and dealt with a different industry and set of facts.

In designing a firewall, the Antitrust Division is careful to ensure that the provision prevents the targeted information from being disseminated so the Court needs to be aware of what potentially problematic types of information needs to be protected and of how to effectively isolate that information. U.S. Dep't of Justice, Antitrust Division Policy Guide to Merger Remedies, 13 (2011) ("Remedies Guide"). The Remedies Guides also notes that "effective monitoring also is required to ensure that the firewall provision is adhered to and is effective". *Id.* at 13.

To provide an example of how a firewall may work, we direct the Court by way of example to look at what the Federal Trade Commission ("FTC") did in PepsiCo, Inc. in 2010.[10] There, PepsiCo was purchasing two bottling companies, which also bottled and distributed products of PepsiCo's rival, Dr. Pepper Snapple Group..[11] The FTC was concerned that because Dr. Pepper Snapple Group, a competitor of PepsiCo, provided commercially sensitive information about its marketing plans to the two bottlers that PepsiCo might gain access to this information, which would hurt Dr. Pepper Snapple Group's ability to compete.[12] Accordingly, the FTC required PepsiCo to set up a "firewall" so that the sensitive information could not be accessed by anyone at PepsiCo who may be in a position to use the information against Dr. Pepper Snapple Group.[13]

Given that CVS Caremark contracts with pharmacies and health insurers, and that Aetna purchases pharmacy and PBM services, PUTT and PSSNY submit the following language for the Court's consideration:

---

[8] CVS Health Corporation's Memorandum In Response to the Court's December 3, 2018 Order to Show Cause at 16.

[9] *See* Letter from Counsel for AT&T to United States, *United States v. AT&T, Inc., et al.*, No. 17-cv-2511, ECF No. 148 (June 14, 2018). AT&T's firewall provision, however, is more detailed as it states that "AT&T will implement a firewall between Turner and AT&T Communications to prevent the transmission or exchange, either directly or indirectly, of competitively sensitive information of unaffiliated programmers or distributors. For the purposes of the foregoing, "competitively sensitive information" "means any non-public information relating to contract terms, pricing, or negotiations."

[10] Earlier this year on June 5, 2018, the FTC conditionally approved Northrop Grumman's acquisition of Orbital ATK with some behavioral conditions including a firewall to protect competitor's confidential information. Press Release, *FTC Imposes Conditions on Northrop Grumman's Acquisition of Solid Rocket Motor Supplier Orbital ATK, Inc.*, June 5, 2018.

[11] Analysis of Agreement Containing Consent Order to Aid Public Comment, In the Matter of PepsiCo, Inc., FTC File No. 091-0133 (F.T.C. Feb. 26, 2010), available at https://www.ftc.gov/sites/default/files/documents/cases/2010/02/100226pepsicoanal.pdf.

[12] Id.

[13] Id.

> CVS Health will implement a firewall to prevent the exchange, either directly or indirectly, of competitively sensitive information of unaffiliated pharmacies, pharmacy benefit managers, and health insurers. For the purpose of the foregoing, "competitive sensitive information" means any non-public information relating to customer and/or patient data, contract terms, pricing or negotiations.

It also seems appropriate that CVS should be required to periodically certify to the Court that it is in compliance with its commitments on a monthly basis or be under the supervision of Julie Myers Wood, the current monitoring trustee, until the Court completes its Tunney Act review.

Finally, given that there are ninety-five comments and the potential for more third party participation in this Tunney Act proceeding, the Court may want to consider setting out a schedule for the DOJ to provide responses to the public comments and for any third parties to reply to those comments.

Thank you for Your Honor's kind attention to this matter.

Respectfully yours,

Andre Barlow
*Counsel for Pharmacists United for Truth and Transparency and Pharmacists Society of the State of New York, Inc.*