**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**CVS HEALTH CORPORATION** *et al.*,<br><br>Defendants. | Case No. 1:18-cv-02340-RJL |

**AMICI CURAIE CONSUMER ACTION and U.S. PIRG'S
WITNESS LIST**

Amici Curiae Consumer Action and U.S. PIRG respectfully submit their witness list pursuant to this Court's April 8, 2019 Order (Dkt. 70). Amici Curiae propose to offer one witness at a future hearing. Her name is Diana L. Moss. The following describes the bases of her knowledge and expertise, describes the subject matter that will be covered by her testimony, and provides an estimate of the duration of her direct testimony.

**Dr. Diana L. Moss, Ph.D.**

*Knowledge and Expertise*

Diana Moss is the President of the American Antitrust Institute ("AAI").[1] She has been the president of AAI since January 2015. AAI is an independent, nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. The AAI serves the public through research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy.

---

[1] Dr. Moss's curriculum vitae is attached as Exhibit 1.

1

As an economist, Dr. Moss has developed and expanded AAI's advocacy channels and strategies, and strengthened communications with enforcers, Congress, other advocacy groups, and the media.  Her work spans both antitrust and regulation, with industry expertise in electricity, petroleum, agriculture, airlines, telecommunications, and healthcare.  Before joining AAI in 2001, Dr. Moss was at the Federal Energy Regulatory Commission, where she coordinated the agency's competition analysis for electricity mergers. From 1989 to 1994, she consulted in private practice in the areas of regulation and antitrust.  Dr. Moss has spoken widely on various topics involving competition policy and enforcement, testified before Congress, appeared before state and federal regulatory commissions, and made numerous radio and television appearances.  She has published articles in a number of economic and legal academic journals, including: *American Economic Review*, *Journal of Industrial Organization*, the *Energy Law Journal*, and the *Antitrust Bulletin*.  She is editor of *Network Access*, *Regulation and Antitrust* (2005).  Dr. Moss has written about merger remedies and wrote a letter to the Department of Justice's Antitrust Division regarding the vertical competitive concerns raised by the CVS/Aetna merger.[2]

Dr. Moss is Adjunct Faculty in the Department of Economics at the University of Colorado at Boulder.  She holds a M.A. degree from the University of Denver and a Ph.D. from the Colorado School of Mines.

### *Proposed Testimony*

Based on publicly available information as well as her knowledge and experience, Dr. Moss will testify how the proposed final judgement ("PFJ") raises concerns about whether the

---

[2] Letter from Diana Moss, President of American Antitrust Institute to the Department of Justice, Regarding *Competitive and Consumer Concerns Raised by the CVS-Aetna Merger* dated March 26, 2018.  Attached as Exhibit 2.

proposed divestiture package to WellCare Health Plans, Inc. ("WellCare") would be an effective remedy in fully restoring competition lost by the elimination of head-to-head competition between CVS Health Corporation ("CVS Health") and Aetna Inc. ("Aetna") in the sale of Medicare Part D prescription drug plans ("PDPs"). Dr. Moss will also testify how the merger of CVS and Aetna restructures healthcare markets to the detriment of competition and consumers. The CVS-Aetna merger combines the largest retail pharmacy chain and one of the two largest PBMs with the third largest health insurer in the United States. The merger raises a number of questions for competition and consumers.

Dr. Moss will testify to the merger's potential to enhance the incentive of CVS-Aetna to exclude rivals and facilitate anticompetitive coordination among health insurers served by PBM CVS-Caremark. CVS and Aetna already wield significant market power in the retail pharmacy, PBM, and health insurance markets. High concentration in these markets exacerbates competitive concerns. Market idiosyncrasies heighten the merger's potentially anticompetitive effects. These include the role of health insurers in paying for most prescriptions filled and of PBMs in managing the flow of prescription drugs to millions of Americans, and PBM markets that lack important transparency. The three large integrated PBM-insurer systems (i.e., CVS-Aetna, Express Scripts-Cigna, and Optum Rx-United Healthcare) dominate the markets and have weak, if any, incentives to compete. This stands in stark contrast to the competition that is fostered by standalone rivals. Dr. Moss will testify that there is little evidence that past vertical acquisitions by CVS, including its acquisition of Caremark, have resulted in significant benefits and have even harmed consumers and independent pharmacies.

Moreover, because the merger solidifies that the three largest PBMs are all vertically integrated, entry barriers increase dramatically, scalable only by those players who could enter

and compete effectively at two levels – PBM and health insurance. This effectively locks out competition by standalone PBMs, insurers, and other market participants – competition that is needed to foster innovation, to protect the stability of the healthcare supply chain, and promote the welfare of the U.S. consumer.

The anticompetitive effects presented by the merger would be detrimental to consumers through potentially higher prices, lower quality, less choice, and less innovation in markets for prescription drugs and health insurance. In healthcare, these effects can make the difference between wellness or disease, and life or death.

Dr. Moss will testify that vertical considerations bear directly on the likely effectiveness of the divestiture remedy in the relevant markets for the sale of PDPs that are alleged in the complaint. The merger raises the threat of input foreclosure directed at Aetna's health insurance rivals, who are or may become Part D plan sponsors. But the divestiture does not adequately address concerns about potential foreclosure of WellCare and other Part D sponsors post-merger, which would have the effect of insulating the merged company from hard competition in individual PDP markets, to the detriment of competition and consumers.

In light of all of this, Dr. Moss will testify that the PFJ is not in the public interest.

### *Approximate Length of Testimony*

One hour of direct examination.

**Conclusion**

Amici Curiae appreciate that this Court has taken seriously its responsibility to conduct a thorough review of the PFJ to determine whether it is in the public interest and fully restores competition for millions of patients.  Dr. Moss's testimony at a hearing would help fully develop the record regarding the potential areas of failure in the PFJ before the Court makes its decision on whether the PFJ adequately resolves the competitive harm raised by the merger.

Dated: April 19, 2019

                          Respectfully submitted,

                          /s/ David Balto
                          David A. Balto
                          Attorney at Law
                          8030 Ellingson Drive
                          Chevy Chase, MD 20815
                          (202) 577-5424
                          david.balto@dcantitrustlaw.com
                          *Attorney for Consumer Action and U.S. PIRG*

                          /s/ Andre Barlow
                          Andre P. Barlow (Bar No. 465683)
                          DOYLE, BARLOW & MAZARD PLLC
                          1110 Vermont Ave, N.W.  Suite 715
                          Washington, D.C.  20005
                          (202) 589-1834
                          abarlow@dbmlawgroup.com
                          *Attorney for Consumer Action and U.S. PIRG*