**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA *et al.*,

        *Plaintiffs*,

v.

CVS HEALTH CORPORATION

and

AETNA INC.,

        *Defendants*.

Case No. 1:18-cv-02340-RJL

**ORAL ARGUMENT REQUESTED**

**MOTION OF THE UNITED STATES TO LIMIT THE SCOPE**
**OF THE TUNNEY ACT HEARING AND**
**EXCLUDE IRRELEVANT AND UNDISCLOSED TESTIMONY**

Much of the testimony proposed by the American Medical Association, AIDS Healthcare Foundation, and Consumer Action and U.S. PIRG (collectively, "amici") is beyond the statutory scope of Tunney Act review and is otherwise inadmissible in an evidentiary hearing of the kind currently proposed. Specifically, the proposed testimony relating to alleged antitrust violations that amici believe the United States should have included in the Complaint is beyond the scope of the public-interest inquiry before the Court and is therefore irrelevant. Consequently, it should be excluded. Much of the opinion testimony offered by amici is also inadmissible or unsupported. It, too, should be excluded.

The United States respectfully requests that the Court limit the scope of the testimony and evidence received at the hearing to the adequacy of the proposed remedy in light of the violations alleged in the Complaint and exclude the proposed out-of-bounds and inadmissible testimony

before the hearing.  For the reasons explained more fully below, the United States requests that

the Court strike Professor Greaney, Dr. Singer, Dr. Burns, Dr. Wohlfeiler, and Dr. Moss from the

witness lists and limit the scope of the testimony from Dr. Scheffler and Professor Sood as

indicated in Attachments A-C.[1]  These limitations will ensure that the hearing remains within the

appropriate statutory and constitutional bounds, and will protect the Executive Branch's

constitutionally mandated control over its resource-allocation decisions in the enforcement of the

antitrust laws.

## I.     The Federal Rules of Evidence apply to an evidentiary hearing under the Tunney Act

Although the Tunney Act expressly contemplates that the Court may make its public-

interest determination on the administrative record alone, *see* 15 U.S.C. § 16(b)-(d), when the

Court decides to go beyond that record and hold an evidentiary hearing, the Federal Rules of

Evidence, applicable to "proceedings in United States courts," apply to testimony and evidence

introduced at that hearing.  *See* Fed. R. Evid. 101(a); *see also* Fed. R. Evid. 1101(b) (specifically

identifying applicability to "civil cases and proceedings").  Applying the Federal Rules of

Evidence helps to ensure that the hearing effectively determines the relevant facts while also

limiting the burden placed on the parties.  Applying the Federal Rules of Evidence to the

forthcoming hearing also will help avoid the prudential and constitutional concerns articulated

below.

---

[1] Amici's April 19 filings outlining their proposed witness testimony are attached to this Motion as Attachments A-C.  The highlighted portions contain outside-the-scope and inadmissible material.  The material highlighted in yellow is an unsupported opinion; the material highlighted in blue is both outside the scope/irrelevant and is unsupported opinion; and the material highlighted in green is an inappropriate legal opinion.  The United States seeks to exclude testimony regarding the highlighted materials from the upcoming hearing.

**II.     The Court should limit the scope of the hearing by excluding all testimony that is not related to the adequacy of the remedy for the violations alleged in the Complaint**

        A.     <u>The scope of the Tunney Act is limited to determining whether the consent judgment reasonably remedies the harm alleged in the Complaint</u>

The Tunney Act entrusts the Court with determining whether a proposed antitrust consent judgment is in the "public interest."  15 U.S.C. § 16(e)(1).  As part of this public-interest inquiry, the scope of the Court's review of the unlawful conduct is limited to "the competitive impact of such judgment, including termination of *alleged violations*," and "the impact of entry of such judgment upon . . . individuals alleging specific injury *from the violations set forth in the complaint*."  *Id.* § 16(e)(1)(A)-(B) (emphases added).  By placing these limitations in the statute, Congress set a boundary beyond which it did not intend courts to cross and limited the authority that it was granting to courts for their review.

As the D.C. Circuit explained in *Microsoft*, a court conducting a Tunney Act review is "barred from reaching beyond the complaint to examine practices the government did not challenge."  *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. Cir. 1995); *see also United States v. Fokker Servs.*, 818 F.3d 733, 738 (D.C. Cir. 2016) (reaffirming *Microsoft* and noting that a court cannot reject a consent decree "because it believes the government 'failed to bring the proper charges'").  Thus, the question before the Court is whether the proposed final judgment is a "reasonably adequate remed[y] for the alleged harm," and is therefore in the public interest.  *See United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152-53 (D.D.C. 2016); *see also* United States' Response to Order to Show Cause (Doc. No. 32), at 1-7; United States' Response to Public Comments on the Proposed Final Judgment (Doc. No. 56), at 2-8.

B.      The Court should exclude amici's proposed testimony that goes beyond the scope
        of the Tunney Act because it is irrelevant

The United States filed a complaint against CVS and Aetna that alleged a violation of the

antitrust laws as a result of a decrease in horizontal competition in 16 markets for the sale of

individual Medicare prescription drug plans (PDPs).  In addition to limiting the scope of the

Court's review under the Tunney Act, the Complaint's allegations establish the outer bounds for

relevant evidence at the Tunney Act hearing.  Based on amici's April 19 filing, much of the

proposed testimony should be excluded under Federal Rule of Evidence 402.

Courts routinely exclude evidence that does not address the question that needs to be

resolved.  For example, in *In Defense of Animals*, the plaintiff sued for access to documents that

were withheld on the basis that they were "confidential" within the meaning of the Freedom of

Information Act.  Concluding that the expert testimony that defendants intended to present was

unrelated to the appropriate statutory definition of "confidential," the court excluded the

testimony.  *In Defense of Animals v. U.S. Dept. of Agric.*, 587 F. Supp. 2d 178, 181-82 (D.D.C.

2008); *see also Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 227 (D.D.C. 2014) (excluding

as irrelevant evidence regarding defendant's "subjective mental state" as it was "not relevant to

[defendant's] defense of qualified privilege"); *United States v. MWI Corp.*, No. 98-2088, 2013

WL 12341690, at *1 (D.D.C. Aug. 27, 2013) (excluding as irrelevant evidence relating to a legal

standard rejected by the court).  Here, the Tunney Act circumscribes the public-interest standard

by directing an inquiry solely into whether the proposed consent judgment reasonably remedies

the violations alleged in the complaint.  Testimony on other subjects is irrelevant and should be

excluded.

In this case, amici's proposed testimony contains three types of irrelevant evidence.  The

first type of irrelevant evidence concerns purported harm outside of the individual PDP market,

including proposed testimony regarding unalleged vertical theories or general issues of vertical foreclosure.  For example, Dr. Singer intends to testify on "the effect of increased vertical integration in the relevant markets," Attachment C at 2; Dr. Wohlfeiler intends to testify on "increasing consolidation in the health care industry"—which appears to include "medical, clinical and pharmaceutical" products but not individual PDPs (the subject of the Complaint in this case), *id.* at 4; and Dr. Moss intends to testify about "the merger's potential to enhance the incentive of CVS-Aetna to exclude rivals," Attachment B at 3.  Because this testimony does not relate to the alleged relevant market—the sale of individual PDPs—it cannot possibly relate to the adequacy of the remedy for the alleged harm, and should be excluded.[2]

The second type of irrelevant evidence relates to a different theory of harm that the United States did not allege:  coordinated effects.  A coordinated effects theory looks not just at what the merged entity can do as a unilateral market participant, but at whether a merger will "affect[] the competitive incentives of multiple firms in the market, not just the merged firm" by making it easier to coordinate within an industry.  U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, HORIZONTAL MERGER GUIDELINES § 7 (2010).  As with vertical theories of harm, these coordinated effects theories of harm are not included in the Complaint and testimony regarding such unalleged theories is therefore irrelevant.  Accordingly, the Court should exclude all such testimony, including Professor Greaney's proposal to testify regarding "mergers to oligopoly" and "a history of collusion and coordination," Attachment A at 6-7, as well as Dr. Moss's testimony regarding the merger's potential to "facilitate anticompetitive coordination among health insurers served by PBM CVS-Caremark," Attachment B at 3.

---

[2] At least some of these witnesses also intend to offer testimony on how vertical issues impact WellCare's likely success as a divestiture buyer.  The United States reserves its right to object to this testimony at the hearing to the extent that it moves beyond the ability of WellCare to compete in the sale of individual PDPs and into broader claims about harm from unalleged vertical theories or general claims of vertical foreclosure.

Finally, amici's proposed testimony regarding efficiencies is related neither to any violation alleged in the Complaint nor to the adequacy of the divestiture.  For example, Dr. Burns intends to testify regarding "the claimed consumer welfare benefits for the Acquisition." Attachment C at 3.  Yet, the United States is not asking the Court to rely on any consumer welfare benefits as part of the alleged violation or the proposed consent judgment.  In fact, the United States alleged that "[t]he proposed merger is also *unlikely* to generate verifiable, merger-specific efficiencies sufficient to outweigh the anticompetitive effects that are likely to occur in the sale of individual PDPs in the relevant Part D regions."  Compl. ¶ 38 (emphasis added). Because testimony regarding efficiencies is unrelated to the adequacy of the remedy, the entirety of Dr. Burns' proposed testimony and any other testimony related to efficiencies is irrelevant.

Failing to exclude irrelevant evidence before the hearing would cause substantial prejudice to the United States.  Congress confined the Court's review to the allegations and the remedy, likely recognizing that it would be unduly burdensome to require the Division to address issues beyond the scope of the Complaint.  This is not a trivial concern.  The Division has already spent thousands of hours in moving through the Tunney Act process for this matter. Moreover, if a court relied on such evidence in making a public-interest determination, it would unconstitutionally direct the Division's resource-allocation decisions, even where the United States has reached a different conclusion about the merits or its likelihood of success.  Overbroad Tunney Act hearings may also limit the Division's ability to settle future cases, as defendants could become concerned that settlement could involve significant expense and uncertainty.  *Cf. Microsoft*, 56 F.3d at 1456 ("A district judge's refusal to accept the decree . . . cannot but have enormous practical consequences for the government's ability to negotiate future settlements.").

C.       The Constitution requires the Court to limit the scope of the hearing

Separation-of-powers principles make clear that there is no practical purpose to litigating

legal theories not included in the Complaint.  The necessary implication of amici's attempt to

seek relief for unalleged claims is to ask the Court to direct the Antitrust Division to bring a

different case, as courts are unable to issue remedies without the predicate of an underlying

violation.  *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969)

(requiring antitrust remedies to be of the "same type or class" as the violations); *Microsoft*, 56

F.3d at 1460 ("And since the claim is not made, a remedy directed to that claim is hardly

appropriate.").  The problem with amici's request is that it would be unconstitutional to direct the

Executive to bring specific charges.  "It is the Executive who is charged by the Constitution to

'take Care that the Laws be faithfully executed,'" and the Executive's decision "not to indict" is

a "decision which has long been regarded as the special province of the Executive Branch."  *See*

*Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (quoting U.S. Const. art. II, § 3)).

Part of the Executive Branch's unique duty is to decide how to allocate prosecutorial

resources, and it would intrude on that decision if a court or amici could force the Division to

participate in overly broad evidentiary hearings under the Tunney Act.  *Caldwell v. Kagan*, 865

F. Supp. 2d 35, 44 (D.D.C. 2012) ("[A]ny agency with limited resources and an investigative

mission has the power, absent an express statute to the contrary, to assess a complaint to

determine whether its resources are best spent on the violation, whether the agency is likely to

succeed, whether the enforcement requested fits the organization's overall policies, and whether

the agency has enough resources to undertake the action.").  Additionally, any inquiry into why

the Division did not bring a specific claim would necessarily involve a consideration of the facts

developed in the investigation, judgment of the prosecuting attorneys, and the allocation of the

Division's limited resources.  All of these considerations are intertwined with the deliberative

process privilege, which promotes the Executive Branch's ability to reach its decisions and direct its resources.

The Antitrust Division has consistently defended against inappropriate expansion of Tunney Act proceedings that would aggravate the separation-of-powers difficulties that inhere in the statute. As former Assistant Attorney General Bingaman explained in a Tunney Act proceeding over two decades ago, "I'm the prosecutor. . . . I decide what makes out a winning case, and if I don't want to file it, nobody can make me file it." Transcript of Jan. 20, 1995 Motion Hearing, *United States v. Microsoft Corp.*, No. 94-cv-1564 (D.D.C.), *available at* the Lexis Counsel Connect Library. The D.C. Circuit agreed, concluding that the Tunney Act does not authorize the court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459; *see also United States v. InBev N.V./S.A.*, No. 08-1965, 2009 U.S. Dist. LEXIS 84787, at *20 (D.D.C. Aug. 11, 2009) ("[T]he 'public interest is not to be measured by comparing the violations alleged in the complaint against those the court believes could have, or even should have, been alleged."). Thus, the United States requests that the Court limit the scope of the hearing to the adequacy of the proposed remedy in light of the violations alleged in the Complaint.

## III.    The Court should exclude inadmissible opinion testimony

In addition to requiring that testimony be relevant, the Federal Rules of Evidence set precise rules for opinion testimony. Amici's proposed opinion testimony does not satisfy these requirements. Some of the proposed opinion testimony focuses on legal issues rather than material that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Other proposed testimony lacks foundation, either as lay opinion

testimony or as expert opinion testimony.  The United States thus requests that the Court also

exclude all of this inadmissible opinion testimony from any forthcoming hearing.

      A.      <u>The Court should exclude legal opinions</u>

"Expert testimony that consists of legal conclusions cannot properly assist the trier of fact

. . . ."  *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, (D.C. Cir. 1997); *see also*

*U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) (striking expert

report "because it contains nothing more than legal opinions").  The American Medical

Association intends to offer testimony from Professor Greaney—a lawyer and a professor of law,

not economics—regarding the "purpose of the antitrust merger law" and the "situations in which

the incipiency standard should be applied."  Attachment A at 6.  These are inappropriate matters

for opinion testimony (in the absence of some unique and technical area of law) and should be

excluded.

Professor Greaney's proposed legal testimony is similar to that excluded in *Iacangelo v.*

*Georgetown University*.  In that case, an expert wanted to offer testimony on the duties imposed

by a federal statute on a treating physician.  No. 05-2086, 2010 WL 4807082, at *2 (D.D.C. Nov.

19, 2010).  The court refused to allow the testimony, as permitting introduction of the "numerous

impermissible legal conclusions . . . would usurp the roles of both the Court and the jury."  *Id.* at

*4.  Similarly, permitting Professor Greaney's legal conclusions as to the scope and purpose of

the Clayton Act would usurp the role of the Court in this proceeding.  If Professor Greaney wants

to offer legal analysis to the Court, the proper mode is for him to assist one of the amici in

writing its briefs.

      B.      <u>The Court should exclude testimony that is not based on sufficient facts or data or that is based on facts or data that have not been disclosed to the United States</u>

Under the Federal Rules, both lay and expert testimony require certain foundation.  Here, amici's proposed testimony lacks that foundation and thus should be excluded.

1.  A lay witness offering fact testimony must have "personal knowledge of the matter." Fed. R. Evid. 602.  A lay witness offering opinion testimony also must do so "rationally based on [his or her] perception" and cannot offer an opinion "based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701(a), (c).  These rules are in place to ensure that litigants do not "evad[e]" the evidentiary requirements for an expert witness "through the simple expedient of proffering an expert in lay witness clothing."  *United States v. Wilson*, 605 F. 3d 985, 1025 (D.C. Cir. 2010).

To the extent that amici intend to proffer lay witnesses, none of their proposed testimony appears admissible.  The matters identified for testimony are highly unlikely to be based on personal knowledge, as none of the witnesses has any direct access to particularized information about the operations of CVS, Aetna, WellCare, or even the relevant market of individual PDPs. "Speculative testimony," in particular, raises problems for lay witness testimony under both Federal Rules of Evidence 602 and 701.  *See Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 105 (D.D.C. 2007) (excluding "hypothetical" opinion testimony about what would have happened under a different factual scenario).  Even if not speculative, the proposed testimony requires a level of scientific, technical, or specialized knowledge that make lay opinion testimony inappropriate.  Amici are proposing Ph.D. economists to testify regarding market concentration, market definition, and other competitive conditions.  They are proposing a business school professor with a Ph.D. and an MBA to testify about efficiencies related to the transaction.  They are proposing a lawyer to address his view of antitrust enforcement in

healthcare markets.  These witnesses plainly intend to offer expert testimony informed by their

scientific, technical, or specialized knowledge, and must be prevented from doing so unless they

satisfy the requirements of Federal Rule of Evidence 702.

2.  Expert testimony likewise requires certain foundation.  First, Federal Rule of Evidence

702 requires that any expert opinion be based on "sufficient facts or data."  Second, the Federal

Rules of Civil Procedure require that expert witnesses whose testimony will be offered at trial

must produce a written report with "a complete statement of all opinions the witness will express

and the basis and reasons for them" as well as "the facts or data considered by the witness in

forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  Because one goal of this requirement is to

offer advanced notice to the other parties, courts routinely require expert reports before accepting

expert testimony at various types of evidentiary hearings.  *See, e.g.*, *Kingman Park Civic Ass'n v.*

*Gray*, 956 F. Supp. 2d 230, 257 (D.D.C. 2013) (referencing expert report submitted in support of

motion for preliminary injunction); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d

15, 24 (D.D.C. 2000) (referencing an expert report from an accountant who testified at a hearing

on a motion to dismiss for lack of personal jurisdiction).  This practice is designed to prevent

"unfair surprise to the opposing party," *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*,

493 F.3d 160, 167 (D.C. Cir. 2007), and also "permit[s] the opposing party to prepare rebuttal

reports . . . and cross-examinations."  *Mineba Co. v. Papst*, 231 F.R.D. 3, 5-6 (D.D.C. 2005).

Amici's April 19 filings plainly do not satisfy the requirements of Federal Rule of Civil

Procedure 26, nor do they provide enough detail to meet the requirements of Federal Rule of

Evidence 702.  As a result, the United States cannot adequately prepare to cross-examine or

rebut these experts.  To even attempt to do so would require an expensive and time-consuming

process of anticipating multiple potential approaches that amici's witnesses could use for their testimony and developing rebuttal analyses for each of these possible approaches.

For example, Professor Sood is expected to testify that the proposed divestiture will not restore competition to premerger levels based on "data on the structure, conduct and performance of firms in the relevant industries," Attachment A at 3, but does not identify what data that is or what econometric analysis, if any, has been done with such data.  Without knowing on what specific data Professor Sood intends to rely, the United States cannot determine whether any disagreement is a result of his data or his analysis.  Similarly, Professor Scheffler intends to testify that "the CVS-Aetna merger and divestiture are likely to lead to consumer harm, including higher premiums." *Id.* at 2.  The United States has no way of knowing whether this will be based on some sort of econometric analysis, historical trends, or something else entirely.  Likewise, Dr. Singer intends to testify on a range of topics from "market definition" to "likely competitive effects." Attachment C at 2.  He does not indicate, however, whether he intends to argue that the United States did not allege the appropriate markets in its Complaint (a subject that would be outside the scope of the Tunney Act hearing and irrelevant to the public-interest standard) or whether he intends to argue that there are anticompetitive effects in the alleged markets that are not adequately remedied by the proposed consent judgment.  If the latter, he does not indicate whether he intends to present a quantification of harm, or simply to testify about economic incentives post-merger.  If his intent is to testify about incentives, he does not disclose any basis for such arguments.  In sum, these submissions are so vague that they do not amount to notice at all, and certainly do not permit the United States to prepare effective cross-examination or rebuttal testimony.

Without notice, any hearing would not be a meaningful one.  The American legal system

is designed to leverage adversarial proceedings to arrive at the truth.  *See Polk Cty. v. Dodson*,

454 U.S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance

the public interest in truth and fairness."); *California v. Green*, 399 U.S. 149, 158 (referring to

cross-examination as "the greatest legal engine ever invented for the discovery of truth" (internal

quotations omitted)).  A fundamental tenet of that adversarial system is that parties must have

sufficient notice of the opposing party's arguments and evidence to permit a thorough

examination.  *See Yee v. City of Escondido*, 503 U.S. 519, 535-36 (1992) (describing the benefit

of notice as "enabl[ing] the respondent to sharpen the arguments" in opposition); *American*

*Lithotripsy Soc'y v. Sullivan*, 785 F. Supp. 1034, 1036-37 (D.D.C. 1992) (describing inadequate

notice as preventing the adversarial comment that the court required to reach a decision).

Permitting that thorough examination and testing to occur before the parties come into court not

only ensures a fair and effective process, but it conserves judicial resources by allowing litigants

to develop efficient presentations that will assist the court in reaching the appropriate outcome.

The United States requests that the Court exclude any purported expert opinions,

including any supporting facts and analysis, because they have not been disclosed to the United

States sufficiently in advance of any hearing to permit it to prepare cross-examinations and

develop rebuttal evidence.  Accordingly, on the current record, the United States requests that the

Court exclude all of the opinion testimony offered in support of the topics highlighted in

Attachments A-C.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court limit the

scope of the Tunney Act hearing and exclude any testimony that addresses theories of harm not

alleged in the Complaint as well as any inadmissible opinion testimony as identified by the

highlighting in the attached submissions from amici.


Dated:  April 29, 2019

                                             Respectfully submitted,


                                             /s/
                                    Jay D. Owen
                                    Andrew J. Robinson
                                    U.S. Department of Justice
                                    Antitrust Division
                                    450 5th Street, NW, Suite 4100
                                    Washington, D.C. 20530
                                    Tel.: (202) 598-2987
                                    Fax: (202) 616-2441
                                    E-mail: Jay.Owen@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(m)

Pursuant to D.D.C. Local Civil Rule 7(m), I hereby certify that I discussed the foregoing

Motion with counsel for CVS.  CVS does not oppose this motion and has filed a separate motion

urging similar relief.

_____/s/_____
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Jay D. Owen, hereby certify that on April 29, 2019, I caused a copy of the foregoing

document to be served upon Plaintiffs State of California, State of Florida, State of Hawaii, State

of Washington, and Defendants CVS Health Corporation and Aetna Inc., via the Court's

CM/ECF system, and to be served upon Plaintiff State of Mississippi by mailing the document

electronically to its duly authorized legal representative:


**Counsel for State of Mississippi:**
Crystal Utley Secoy
Consumer Protection Division
Mississippi Attorney General's Office
P.O. Box 22947
Jackson, Mississippi 39225
Phone: (601) 359-4213
cutle@ago.state.ms.us


          /s/          
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov
