# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA *et al.*,

     *Plaintiffs*,

v.

CVS HEALTH CORPORATION

and

AETNA INC.,

     *Defendants.*

Case No. 1:18-cv-02340-RJL

## UNITED STATES' WITNESS LIST AND REQUEST FOR CLARIFICATION
## OF PROCEDURES FOR TUNNEY ACT HEARING

In response to the Court's April 8, 2019 Order, the United States provides the following

list of witnesses it proposes to call at any upcoming Tunney Act hearing.[1] The witnesses will be

prepared to provide further evidence that the proposed Final Judgment is in the public interest

because the proposed judgment reasonably addresses the violations alleged in the Complaint. As

detailed in the United States' previous filings (*see, e.g.,* Dkts # 3, 32, and 56), to meet this

standard, the United States must only show that the proposed final judgment is a "reasonably

adequate remed[y] for the alleged harm," and is therefore in the public interest.  *See United*

*States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152-53 (D.D.C. 2016). The witnesses'

---

[1] The United States interprets the Court's order to allow the plaintiffs to offer three witnesses, combined, *and* the defendants to offer three witnesses, combined, but recognizes there may be potential ambiguity in the Order about what the Court meant by "combined." If the Court instead meant to limit plaintiffs and defendants to a total of three witnesses among them, the United States requests a modification of the April 8, 2019 Order to allow the United States, CVS, and Aetna to call all five of their designated witnesses. The United States has streamlined its planned testimony as much as possible; accordingly, failure to make such a modification, if needed, could unfairly prejudice the United States' ability to rebut the seven witnesses that the Court-approved amici intend to present to the Court.

testimony will further corroborate that the proposed Final Judgment satisfies the public-interest standard by providing comprehensive relief that provides WellCare with the assets and scale necessary to maintain competition in the 16 geographic regions identified in the Complaint.

Since the Court issued its Order, the United States has filed two motions to help prepare for any such hearing: On April 18, the United States moved the Court to incorporate the Tunney Act materials as part of the evidentiary record. Dkt. #73. On April 29, the United States moved the Court to limit the scope of the hearing and exclude irrelevant and undisclosed testimony. Dkt. #82.

The first filing is consistent with the Court's Order that the United States may "rebut" amici's evidence at the hearing, as well as the United States' understanding of the appropriate scope of Tunney Act proceedings. As explained in the filing, the Court can and should accept the Tunney Act Materials as evidence that (1) the United States has complied with all Tunney Act procedural requirements and (2) the proposed final judgment reasonably remedies the violations in the Complaint in a manner consistent with the public interest. Should amici put forward evidence suggesting otherwise, the United States may rebut that showing, if necessary, at the hearing.

The second filing explains that any hearing should be limited to evidence and arguments addressing whether the proposed decree is consistent with the public interest as a remedy for the violations alleged in the Complaint, and that amici should be limited to arguments for which they have provided sufficient notice.

If the Court denies these motions, the United States requests notice of at least three weeks following any additional submissions from amici or clarifications from the Court to allow it to have an adequate opportunity to prepare and supplement its witness list as necessary.

The United States also requests three weeks' notice of—and an opportunity to be heard on—any issues the Court deems relevant to its public-interest determination that are beyond amici's previously identified challenges to the adequacy of the remedy in the proposed consent judgment. If the Court denies the United States' motions or does not allow supplemental witnesses if necessary, it would unfairly prejudice the United States by forcing it to prepare for a hearing without proper notice of the scope of the hearing or the context in which the Court intends to evaluate the evidence presented.

In addition, the United States requests that the Court allow it to provide a short opening statement and closing argument of 20 minutes each. Allowing a short opening statement and closing argument would enable the United States to frame the relevant issues before the Court and put the witness testimony in context.[2]

## Witnesses

**Fact Witness: Michael Radu**

*Knowledge and Expertise*

Michael Radu is the Executive Vice President of Clinical Operations and Business Development for WellCare. In his current role, Mr. Radu leads WellCare's clinical services operations and pharmacy relationships. Mr. Radu's responsibilities include profit-and-loss responsibility for WellCare's individual PDP business throughout the United States. Before his current role, Mr. Radu had 25 years of experience in the managed-care industry, including work related to Medicaid and Medicare health plan management.

---

[2] The United States has consulted with counsel for CVS, who does not oppose the requests for clarification.

Mr. Radu holds a bachelor's degree in psychology from the University of California, Los Angeles and an MBA from the University of Southern California Marshall School of Business. Mr. Radu's resume is attached as Exhibit A.

*Proposed Testimony*

This section describes the topics about which Mr. Radu is prepared to testify, and is limited to topics that rebut the testimony that amici proposed to offer in their filings of April 19 or other previously disclosed materials. This representation regarding Mr. Radu's ability to testify to these topics is not intended to alter in any way the United States' position that the scope of the proposed evidentiary hearing should be limited as described in its pending motions.

Due to his position and responsibilities at WellCare, Mr. Radu is familiar with WellCare's individual PDP business, including the competition it faces, WellCare's decision to purchase Aetna's individual PDP assets, and WellCare's integration of those assets. Mr. Radu is prepared to testify that WellCare is familiar with the individual PDP market and has been a competitor in individual PDP since the program's inception in 2006, and that the divestiture assets will likely enable WellCare to maintain and even improve its competitive offerings in the marketplace. Mr. Radu is further prepared to testify that WellCare has experience successfully integrating individual PDP assets, that the divestiture assets include what WellCare needs to keep the assets competitive, and that the Aetna data received during the divestiture augments and complements the nationwide infrastructure already possessed by WellCare.

With respect to the divestiture purchase price, Mr. Radu is prepared to testify that WellCare undertook its own analysis of Aetna's individual PDP business, that WellCare's bid for the divestiture assets reflects the reasonable value of the assets under the circumstances of the divestiture. Mr. Radu will also testify that WellCare made an independent decision to contract

with Caremark, CVS's pharmacy benefit manager ("PBM"), that this decision was in the best financial interest of WellCare, that WellCare is putting its PBM services contract out for bid in the near future, and that WellCare has competitive options for the PBM and retail pharmacy services that it requires.

In addition to the testimony described above, the United States, subject to its pending motions, reserves the right to call Mr. Radu to rebut any other testimony or evidence entered into the record by amici's witnesses.

*Approximate Length of Testimony*

Two hours.

**Fact Witness: Terri Swanson**

The United States understands that CVS intends to designate Terri Swanson, the Vice President of Medicare Product and Part D business at Aetna, as a witness. The United States hereby cross-designates Ms. Swanson as a witness for the same proposed testimony detailed in CVS's witness list.

*Approximate Length of Testimony*

One hour.

**Expert Witness: Dr. Nicholas Hill**

*Knowledge and Expertise*

Dr. Nicholas Hill is an expert in antitrust economics in a number of industries, including healthcare. He has provided economic analysis in a wide range of antitrust healthcare matters involving hospitals, health insurers, and pharmaceutical companies. Dr. Hill spent 2006-2017 in government service, including time as an assistant section chief in the Economic Analysis Group at the Antitrust Division of the Department of Justice and as an economist in the Bureau of

Economics at the Federal Trade Commission. At the Antitrust Division, he received the U.S.

Attorney General's Award for Distinguished Service. He is currently a partner at the Bates White

Economic Consulting Group and has a PhD in Economics from Johns Hopkins University where

he was a visiting professor in the fall of 2007. He also has a bachelor of arts in economics and

international studies and a masters in science (MSc) in quantitative development economics from

the University of Warwick.

During his time at the Department of Justice and the Federal Trade Commission, Dr. Hill

provided economic analysis in a number of healthcare matters. He also analyzed over 20

proposed divestitures in a variety of industries and provided a written declaration in a prior

Tunney Act proceeding. A copy of Dr. Hill's CV is attached as Exhibit B.

*Proposed Testimony*

This section describes the topics about which Dr. Hill is prepared to testify, and is limited

to topics that rebut the testimony that amici proposed to offer in their filings of April 19 or other

previously disclosed materials. This representation regarding Dr. Hill's ability to testify to these

topics is not intended to alter in any way the United States' position that the scope of the

proposed evidentiary hearing should be limited as described in its pending motions. The United

States continues to maintain that experts should have to disclose their analyses and sources prior

to any hearing, and with sufficient time for the other side to prepare. If the Court disagrees and

allows amici's expert witnesses to testify based on the material currently not in the record, then

Dr. Hill should also be allowed to testify to expert opinions, or rely on materials, not described in

this filing.

Dr. Hill is prepared to testify about competition and consumer welfare in the sale of

individual PDPs. He can interpret public information about individual PDP markets, including

enrollment[3] and financial data,[4] and can testify to the likelihood of various outcomes from the proposed divestiture from Aetna to WellCare. Dr. Hill's testimony will specifically rebut three arguments contained in amici's filings.

**First,** Dr. Hill is prepared to testify that, based on an economic analysis of the proposed remedy, the divestiture to WellCare is likely to maintain the competitiveness of individual PDP markets. Relying on public enrollment data as well as interviews with and testimony from Mike Radu, a WellCare executive listed above, Dr. Hill can testify that WellCare is an experienced competitor for individual PDPs. Relying on this same information, Dr. Hill can testify that the divestiture will likely maintain the level of pre-merger competition in the relevant markets. Dr. Hill can also testify that the divestiture will strengthen WellCare by increasing its scale and providing it with data, contracts, and expertise that will enable it to take advantage of that increased scale.

Dr. Hill can also testify that WellCare's past experience, including its 2013 acquisition of Windsor Health Group, demonstrates its ability to successfully integrate individual PDP plans and that publicly available enrollment data shows that WellCare successfully retained most of the Windsor enrollment during the years following the acquisition.

Relying on his experience as an antitrust economist who was involved in over 20 remedies as well as a review of the economic literature on this subject, Dr. Hill can also testify that the divestiture to WellCare is made to a qualified buyer and includes all necessary assets and is therefore likely to preserve competition. Dr. Hill can testify that WellCare has been an active

---

[3] *Available at*: https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/Monthly-Enrollment-by-Contract-Plan-State-County html and https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovGenIn/index.html .
[4] *Available at:* https://www.cms.gov/Medicare/Medicare-Advantage/Plan-Payment/Downloads/CY2014-MLR-Data-Release-File.zip .

participant in individual PDP markets since their inception in 2006; that WellCare already has pharmacy networks throughout the United States; that the divestiture includes Aetna's entire individual PDP business; and that WellCare has received a valuable set of data and expertise through the divestiture.

Dr. Hill is prepared to address any claim that the WellCare divestiture is in any way similar—from the perspective of antitrust economic analysis—to the proposed divestiture to Molina in the *Aetna/Humana* case. Based on publicly available information in the *Aetna/Humana* trial record,[5] Dr. Hill is prepared to contrast the robust divestiture in this matter with the rejected remedy in *Aetna/Humana*. Dr. Hill can testify that Molina (the proposed buyer in *Aetna/Humana*) had tried, and failed, to enter the relevant markets; that Molina had no presence, and hence no provider networks, in any states in which lives were to be divested; that Molina would not have received an entire line of business; and that Molina would not have received access to a comprehensive set of data or staff through the divestiture. Similarly, based on publicly available information in WellCare's corporate filings and the *Humana/Arcadian* record,[6] Dr. Hill is prepared to testify that the divestiture in *Humana/Arcadian* is not comparable to the proposed divestiture in this matter, as the *Humana/Arcadian* divestiture was not a complete line of business and was sold to buyers without provider networks in many of the markets where the assets were acquired.

Dr. Hill could also testify that the purchase price of the divestiture in this case is not dispositive as to the assets' future competitive significance, as the pool of potential buyers of the divestiture assets was necessarily limited because of the stringent standards that antitrust enforcement agencies impose on buyers.

---

[5] *See United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 73 (D.D.C. 2017).
[6] *See United States v. Humana, Inc.*, 1:12-cv-00464 (D.D.C. March 27, 2012).

**Second,** Dr. Hill is prepared to rebut amici's arguments that the divestiture of Aetna's individual PDP business to WellCare will create competitive issues of its own accord. Relying on public enrollment data, Dr. Hill can testify that, while the combination of WellCare and Aetna does result in HHIs in several Medicare regions that "potentially raise significant competitive concerns" relative to premerger levels, moderate concentration levels alone often do not lead to anticompetitive effects. Relying on the same enrollment data, Dr. Hill will testify that other features of the individual PDP markets, including competition from other competitors such as Humana, CVS, and UnitedHealth, and the fact that WellCare's share was small in many individual PDP markets, do not fuel concerns related to a combination of WellCare and Aetna. Dr. Hill can also testify that other market participants such as Express Scripts had similar market profiles to WellCare and that Rite-Aid's EnvisionRx is a growing individual PDP participant, further undermining any concern regarding the elimination of WellCare as an independent competitor.

**Third,** Dr. Hill is prepared to testify that WellCare is unlikely to be subject to vertical foreclosure following the divestiture. Relying on publicly available enrollment data, the allegations in the Complaint, Dkt. #1, and interviews with and testimony from Terri Swanson, an Aetna executive, Dr. Hill can testify that Aetna was a strong competitor to CVS and that there is no evidence that it was foreclosed prior to the acquisition. Dr. Hill can then testify to several flaws in the numerical assessment of the profitability of foreclosure described by Dr. Sood as indicating a probability of foreclosure. Using publicly available enrollment and industry financial data, Dr. Hill can then testify to a properly formulated assessment of the profitability of foreclosure, which shows CVS has no meaningful economic incentive to foreclose WellCare from its PBM services. Based on past examples of behavior in retail pharmacy markets, Dr. Hill

can also testify that CVS would face significant financial losses if it were to foreclose WellCare from its retail pharmacies.

In addition to the testimony described above, the United States, subject to its pending motions, reserves the right to call Dr. Hill to rebut any other testimony, analysis, or evidence entered into the record by amici's witnesses, including the structure, conduct, performance analysis suggested by Dr. Sood's proposed testimony.

*Approximate Length of Testimony*

Four hours.

Dated: May 3, 2019

Respectfully submitted,

_____/s/_____
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jay D. Owen, hereby certify that on May 3, 2019, I caused a copy of the foregoing

document to be served upon Plaintiffs State of California, State of Florida, State of Hawaii, State

of Washington, and Defendants CVS Health Corporation and Aetna Inc., via the Court's

CM/ECF system, and to be served upon Plaintiff State of Mississippi by mailing the document

electronically to its duly authorized legal representative:


**Counsel for State of Mississippi:**
Crystal Utley Secoy
Consumer Protection Division
Mississippi Attorney General's Office
P.O. Box 22947
Jackson, Mississippi 39225
Phone: (601) 359-4213
cutle@ago.state.ms.us


_____/s/_____
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov