**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA *et al.*,

                *Plaintiffs*,

v.

CVS HEALTH CORPORATION

and

AETNA INC.,

                *Defendants.*

Case No. 1:18-cv-02340-RJL

---

**UNITED STATES' MOTION TO CLARIFY AND AMEND**
**THE COURT'S PLANNED TUNNEY ACT PROCEDURE**

The United States submits this motion to ask the Court to clarify and amend its procedure for determining whether the proposed consent judgment is in the public interest. In particular, the procedure the Court has adopted for the hearing scheduled to begin June 4 excludes the United States from meaningful participation and fails to give adequate deference to the United States' prosecutorial discretion. Unless the procedure is modified as described below, the hearing would be unfair, unreliable, and contrary to the intent of Congress in passing the Tunney Act.

**Argument**

**I.      The Court should clarify and amend its procedure in advance of the hearing.**

The Tunney Act procedures as currently designed in this case have two broad problems. The first is that the Court has delegated significant responsibility to amici to frame the issues that are the subject of further inquiry, without identifying how it intends to evaluate those issues in light of the United States' Complaint, Proposed Final Judgment, Competitive Impact Statement,

Explanation of Consent Decree Procedures, and Response to Public Comments (collectively, the "Tunney Act Materials"), filed with the Court as Dkt. Nos. 1, 2-1, 3, 2, and 56, respectively, which are part of the record. This leaves substantial uncertainty about how the Court will make its public-interest determination and precludes the United States from being able to prepare a meaningful response to the amici's presentation.

The second problem is that the United States appears not to have any opportunity to test, or in any way rebut, the factual assertions that amici will make at the hearing. Although the Court previously indicated it would allow cross examination of amici's witnesses, Dkt. No. 69 at 7 ("I, obviously, would give the Government and CVS-Aetna a chance to question the [amicus] witness, as well."), the May 13, 2019 Order disallows all cross examination, Dkt. No. 90 at 3. The Order also excludes the two primary witnesses identified by the United States to rebut those factual assertions that amici indicated they plan to make through their witnesses.[1] By selecting all three of CVS's requested witnesses, but not the government's, the Court erroneously treats CVS and the United States as having an identity of interests. They do not; CVS and the United States are adverse parties that reached a compromise to resolve their dispute through settlement. CVS cannot stand in place of the United States to defend the public interest in the proposed consent judgment or the government's prosecutorial discretion in deciding which claims to litigate, whether to settle, and on what terms to settle. In short, as currently envisioned, amici's presentation of evidence at the Tunney Act hearing will go entirely untested by the United States and have very little, if any, indicia of reliability.

---

[1] The United States continues to assert that testimony beyond the scope of the adequacy of the proposed consent judgment to remedy the antitrust violations alleged in the complaint, including as to any potential harm from the transaction not alleged in the complaint, should be excluded from the hearing and the Court's public-interest determination. Given the Court's ruling otherwise, Dkt. No. 90, however, the United States must be given the opportunity to test and rebut those assertions as well, which may require testimony or written submissions from additional witnesses not named in the United States' prior witness list filing, *see* Dkt. No. 84 at 2–3.

To resolve these problems, as explained in greater detail in subsequent sections below, the Court should clarify or amend its planned Tunney Act procedure in three ways. First, the Court should expressly find that the Tunney Act Materials provide a factual basis for concluding that the proposed consent judgment is a reasonably adequate remedy for the harm alleged in the Complaint and that, absent reliable evidence showing otherwise, the Court will enter the judgment without requiring further evidence from the United States. Second, the Court should restructure the hearing to give the United States the opportunity to participate through cross-examination and—if the Court still has concerns at the conclusion of the hearing about whether the proposed consent judgment is in the public interest—give the United States adequate notice and a meaningful opportunity to present a rebuttal case at a later date. Third, at a minimum, the Court should limit the scope of amici witnesses' testimony at the hearing to the objections that amici clearly and specifically raised, and the evidence and argument amici provided to the United States, during the comment process. Finally, to avoid the substantial prejudice to the parties and amici that would result from the absence of advanced notice of the Court's decision on these requests, the Court should rule on this motion sufficiently in advance of the hearing so that the participants have adequate opportunity to adjust their presentation as needed.

## II.     The Court should find that the Tunney Act Materials provide a factual basis for concluding that the proposed consent judgment is a reasonably adequate remedy for the harm alleged in the complaint.

The Court has accepted the Tunney Act Materials as part of the evidentiary record. *See* Dkt. No. 90. It has also stated that the United States "will not be required to offer . . . any evidence at all" at the hearing, *id.* at 3, and that any further evidence from the United States is limited to rebutting amici witnesses. Dkt. No. 70. In light of this and given the procedural posture of this case, the next logical step for the Court is to explain why this is so: because the

United States has complied with the Tunney Act's requirements, and the Tunney Act Materials provide a factual basis for concluding that the proposed consent judgment is a reasonably adequate remedy for the harm alleged in the complaint. The Court should make this finding express, before the hearing, and clarify that, in the absence of reliable evidence to the contrary, it will enter the proposed consent judgment. This clarification is necessary in this case to give the parties adequate notice of the state of play in advance of the hearing so that they may tailor their presentations accordingly.

The Tunney Act imposes substantial obligations on the United States and requires it to make significant and substantive filings with the Court during the administrative process. For instance, the United States must file the proposed consent judgment, a competitive impact statement explaining why the United States has proposed the consent judgment to resolve its enforcement action, and a response to the public comments on its proposal. 15 U.S.C. § 16(b)–(d). The competitive impact statement alone obligates the United States to file a detailed description and explanation of "the nature and purpose of the proceeding," and an explanation of the proposed consent judgment.

No one disputes that the United States has complied with the Tunney Act's requirements in this case. If the Court believes that the United States has not complied with these requirements, the United States requests that the Court advise the United States now and defer further proceedings until any deficiencies can be addressed. Absent that circumstance, the Court should find that the Tunney Act Materials provide a "factual basis for concluding that the [remedy in the proposed consent judgment] is a reasonably adequate remedy for the harm predicted in the Complaint." *United States v. Abitibi-Consol. Inc.*, 584 F. Supp. 2d 162, 165 (D.D.C. 2008); *accord, e.g.*, *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir.

1995); *United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152–53 (D.D.C. 2016); *United States v. Sinclair Broad. Grp., Inc.*, 74 F. Supp. 3d 468, 473 (D.D.C. 2014); *United States v. Republic Servs., Inc.*, 723 F. Supp. 2d 157, 160 (D.D.C. 2010). The Court should further clarify that, in the absence of reliable evidence that the proposal is "so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest,'" the court will enter the proposed consent judgment, without requiring any further evidence. *Microsoft*, 56 F.3d at 1461.

Crediting the Tunney Act Materials in this way makes sense as a practical matter and affords the appropriate deference to the judgment of the United States. The United States is uniquely situated to assist the Court in answering whether the settlement it entered into in its prosecutorial discretion is in the public interest. Among other reasons, the United States spent almost a year investigating the potential substantial lessening of competition as a result of the merger between CVS and Aetna—including a detailed investigation of whether the proposed divestiture to WellCare would remedy those concerns. It received millions of documents, analyzed significant amounts of proprietary data, and interviewed more than one hundred market participants around the country. Reflecting this, the United States' predictions with respect to the efficacy of the remedy are to be afforded deference by the Court. *See, e.g.*, *Microsoft*, 56 F.3d at 1461 (recognizing courts should give "due respect to the Justice Department's . . . view of the nature of its case'"); *United States v. Iron Mountain, Inc.*, 217 F. Supp. 3d 146, 152–53 (D.D.C. 2016) ("In evaluating objections to settlement agreements under the Tunney Act, a court must be mindful that [t]he government need not prove that the settlements will perfectly remedy the alleged antitrust harms[;] it need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." (internal citations omitted)); *United States v. Republic Servs., Inc.*, 723 F. Supp. 2d 157, 160 (D.D.C. 2010) (noting "the deferential

review to which the government's proposed remedy is accorded"); *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) ("A district court must accord due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its view of the nature of the case."). *Cf. SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (analogizing review of SEC consent decree to the Tunney Act and stating "the court should have deferred to the agency's decision that the decree is appropriate and simply ensured that the proposed judgment is reasonable").

Moreover, crediting the Tunney Act Materials gives effect to the balance Congress struck in the Tunney Act between a court's need to "obtain the necessary information to make its determination that the proposed consent decree is in the public interest" with the government's need to "preserve the consent decree as a viable settlement option." S. Rep. No. 93-298, 93d Cong., 1st Sess., at 6 (June 30, 1973). On the one hand, this treatment recognizes that the court may exercise its discretion to inquire further into the reasonableness of the remedy proposed in the consent judgment. *See* 15 U.S.C. § 16(f). On the other hand, it ensures the proposed consent judgment is not subjected to full-blown litigation in the ordinary course—for if that were the case, the consent judgment would cease to be "a viable settlement option," S. Rep. No. 93-298, at 6, which would hinder rather than help government enforcement. "Obviously, the consent decree is of crucial importance as an enforcement tool, since it permits the allocation of resources elsewhere." *Id.* at 5.

Finally, crediting the Tunney Act Materials comports with the presumption of regularity, which applies to Executive Branch officials' "prosecutorial decisions" and requires that, "in the absence of clear evidence to the contrary, courts presume that [officials] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting

*United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)); *accord U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 17 (2001). That presumption of regularity is particularly important when, as here, a court is asked "to exercise judicial power over a 'special province' of the Executive.'" *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). It helps to ensure minimal litigation intrusion in the United States' prosecutorial decisions and gives the necessary deference to the United States' primary role in deciding which claims to investigate, which claims to test through litigation, and which claims to settle. The Court should therefore apply it in this case by crediting the Tunney Act Materials and notifying the parties of its intent to do so in advance of the hearing.

**III.     The Court should restructure the hearing to allow the United States a meaningful opportunity to participate.**

Notwithstanding the United States' central role in reviewing this merger, the upcoming evidentiary hearing on June 4 eliminates the United States' ability to participate in any meaningful way. *See* Dkt. No 90. In particular, despite serious concerns about the reliability of amici's proposed testimony, *see* Dkt. No. 82, the United States has been prohibited from cross-examining those witnesses, and it has been denied the opportunity to rebut that testimony with its own witnesses. This violates fundamental principles of procedural fairness. At best, this approach will leave the court with an incomplete picture of the merits of the proposed settlement. At worst, it risks leading to a result that harms consumers. It would be clear error for the Court to rely on evidence introduced in such a flawed hearing to refuse to enter the proposed consent judgment.

Accordingly, as explained below, the United States asks the Court to restructure the hearing in a way that allows the United States to participate and—if the Court still has concerns at the conclusion of the hearing about whether the proposed Final Judgment is in the public interest—allows the United States to present a rebuttal case at a later date.

A. **The United States should be given a meaningful opportunity to cross examine all witnesses.**

The hearing is currently set up to accept unreliable testimony from amici. *See* Dkt. Nos. 82 and 84 (describing problems with amici's proposed testimony). Testimony from these witnesses may also have the effect of misleading the Court about the true nature of the divestiture of Aetna's individual PDP business to WellCare.

This problem is exacerbated by the lack of any opportunity to expose the potential weaknesses, inconsistencies, or inaccuracies of this testimony. Ordinarily, these types of flaws could be highlighted through cross-examination or the introduction of rebuttal evidence. The Supreme Court has recognized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993); *see also California v. Green*, 399 U.S. 149, 158 (1970) (describing cross-examination as "the greatest legal engine ever invented for the discovery of truth" (internal quotations omitted)); *cf., e.g.*, *Alexander v. FBI*, 198 F.R.D. 306, 320 (D.D.C. 2000) (describing the ability to cross-examine the witness as an "indicia of reliability" that supports the admission of certain hearsay testimony).

To allow for adequate testing of the reliability of the witnesses at the hearing, the Court should give the United States an opportunity to cross examine each witness for a time that is no less than that allotted for direct testimony.[2] Among other things, this will help mitigate the one-

---

[2] Because of the prejudice to the United States described in the United States' Motion to Limit the Scope of the Tunney Act Hearing and Exclude Irrelevant and Undisclosed Testimony, the United States objects to the Court's decision to conduct the June 4–6 hearing without first requiring amici to disclose the conclusions, facts, and analyses which these witnesses intend to rely on at least three weeks in advance of the hearing, facilitating the penetrating cross-examination contemplated by our adversarial system. *See* Dkt No. 82 at 10–13. In light of this decision, as explained in the next subsection, if the Court is not satisfied that the proposed consent judgment is in the public interest at the conclusion of that hearing, the Court should, among other things, order amici to turn over these

sidedness of the proceeding and increase the likelihood that the hearing crystallizes which, if any, issues have merit.

> **B.     The United States should be given adequate notice and a meaningful opportunity to present a rebuttal case if the Court is unsatisfied that the proposed consent judgment is in the public interest following the hearing.**

The Court's May 13th Order also deprives the United States of the opportunity to introduce rebuttal evidence to demonstrate faulty factual assumptions and analyses made by amici's witnesses. The Court has excluded two rebuttal witnesses listed by the United States without any explanation or notice of the standard applied by the Court in reaching that decision. Based on the description of planned amici testimony, these witnesses would present relevant rebuttal evidence, and refusing to hear from them would leave the factual record incomplete. For example, the Court expressed a desire to "understand[] . . . how participants in markets for individual prescription drug plans ("PDPs") are affected by markets for pharmacy benefit management ("PBM") services," as well as "the ways the divestiture remedy may be affected by PBM markets." Dkt. No 90 at 3. Yet, the Court rejected proposed testimony from WellCare's Executive Vice President of Clinical Operations and Business Development, Michael Radu, regarding WellCare's interaction with PBMs, and rejected proposed testimony from Dr. Nicholas Hill that would rebut expected testimony from Dr. Neeraj Sood and American Antitrust Institute's Diana Moss regarding the likelihood of whether PBM services are used to foreclose competition in the individual PDP market. *See* Dkt. No. 84.

Despite the Court's selection of three witnesses "[f]or the Government and CVS," the United States is not seeking the testimony of Dr. Alan Lotvin or Dr. Lawrence Wu, and they are

---

materials and give the United States the opportunity to recall amici's witnesses for cross examination no fewer than three weeks after the United States receives the disclosures.

not the United States' witnesses.[3] Because CVS's and the United States' interests are not the same, CVS cannot stand in the place of the United States in this proceeding. As a government agency and plaintiff in this matter, the United States is seeking to enforce the antitrust laws to protect consumers and ensure that the consent judgment reasonably addresses the harm alleged in the complaint. *See Iron Mountain, Inc.*, 217 F. Supp. 3d at 152–53. The United States also has a deep and ongoing interest in how the Tunney Act, Clayton Act, and other antitrust laws are applied to ensure appropriate enforcement of the substance of, and procedures arising from, these laws. As a defendant, however, CVS is focused on getting the consent judgment approved. Because of these differing interests, the United States should not be forced to rely on the witnesses proposed by CVS. It would therefore be error to allow only CVS to rebut amici's witnesses, and it would likewise be an error to restrict without reason the United States' ability to present the evidence it deems necessary in rebuttal.

        This exclusion is particularly problematic here because it eliminates the views of the United States. As explained in more detail in the Response to Comments, Dkt. No. 56 at 2–8, the Court "must accord due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case." *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003); *see also United States v. U.S. Airways Group, Inc.*, 38 F. Supp. 3d 69, 74–75 (D.D.C. 2014) (noting that a court should not reject the proposed remedies because it believes others are preferable and that room must be made for the government to grant concessions in the negotiation process for settlements). By excluding the United States' proposed witnesses, the Court is thus not only depriving itself of the

---

[3] The United States cross-designated CVS's witness, Terri Swanson, to provide notice that its expert would rely on portions of her testimony. Dkt. No. 84 at 5.

government's views—the information most relevant to the public-interest determination—but also the views that the Court *must* defer to in making its determination.

At the same time, the United States may not need to present a rebuttal case if, after the hearing, the Court determines that the proposed consent judgment is in the public interest. The Court should do so, without further inquiry, if amici's evidence is unreliable or insufficient to demonstrate that the remedies in the proposed consent judgment are "so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest.'" *Microsoft*, 56 F.3d at 1461. Accordingly, to avoid an unnecessary waste of judicial, government, and participant resources, the Court should allow oral argument or briefing at the conclusion of the hearing to determine whether further proceedings are required.

If, following this argument or briefing, the presentation of concerns offered by amici and the factual background offered by CVS leave the Court with questions about whether the proposed consent judgment is in the public interest, the Court should give the United States notice of what issues it considers relevant and disputed. This notice would provide basic procedural fairness and give the United States a meaningful opportunity to prepare its rebuttal case. Then, no sooner than three weeks after the Court has informed the United States of the relevant and disputed issues, the Court should allow the United States to present the witnesses, declarations, or other evidence that the United States deems necessary to resolve the disputes identified by the Court. (As stated in note 2, *supra*, because the Court declined to require expert disclosures before the June 4 hearing, if the case proceeds to rebuttal stage, the Court should also require amici to make those disclosures, give the United States at least three weeks from the receipt of those disclosures before any hearing, and authorize the United States to recall any witnesses it deems necessary, who could at that point be fully and reliably cross-examined with

the benefit of proper notice and preparation.) The process should conclude with briefing, which would allow the participants to summarize the evidence before the Court and describe any legal issues that should be considered in the Court's determination.

By restructuring the Court's planned Tunney Act procedure in this way, the Court would give the United States a meaningful opportunity to participate in the proceedings, test the reliability of the amici's evidence, and rebut that evidence as needed. The Court would then have the benefit of a record produced through a fair and orderly process.

IV.     **The Court should limit the scope of the amici witnesses' testimony to the objections that amici clearly and specifically raised, and the evidence and arguments provided to the United States, during the comment process.**

As explained above, the proposed restructuring ensures the United States can meaningfully participate in the Tunney Act proceedings upon adequate notice of the issues in dispute. Regardless of whether the Court restructures the hearing as proposed, however, it should limit the amici witnesses' testimony to the specific arguments and evidence that the amici submitted to the government during the comments process, for two reasons.

*First*, limiting amici's presentation to the issues that they raised during the comments process would make the Tunney Act's administrative proceedings more effective because the United States would have an opportunity to respond to amici's concerns. If, on the other hand, amici could inject new issues into the Tunney Act proceeding at any time, the substantial obligations on the United States during the mandated administrative process, including the obligation to respond to the comments received, would not fulfill the purpose that Congress intended.

In the vast majority of cases, the Tunney Act's administrative process generates the universe of information necessary for the court to make its public-interest determination. The

mandatory process is substantial. Among other things, the United States "shall file with the district court, publish in the Federal Register, and thereafter furnish to any person upon request, a competitive impact statement" explaining the proposed consent judgment, "shall receive and consider any written comments relating to the proposal for the consent judgment submitted under subsection (b)," and "shall file with the district court and cause to be published in the Federal Register a response to such comments." 15 U.S.C. § 16(b), (d). Given this, "[t]he Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone." *United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000); *accord United States v. US Airways Grp., Inc.*, 38 F. Supp. 3d 69, 76 (D.D.C. 2014); *see* 15 U.S.C. § 16(e)(2) ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene."). Courts therefore almost always enter proposed consent judgments under the Tunney Act without requiring further proceedings.[4] Such efficient resolution of Tunney Act cases would not be possible, however, if amici were permitted to expand the disputed issues indefinitely.

*Second*, limiting amici's presentation to the issues that they raised during the comments process allows for an orderly process and reinforces the appropriate division of authority between the Executive and Judiciary branches. It gives the government "the first crack" at considering any objections to the proposed consent judgment and acting as the initial factfinder to assess whether, and how, to address them. *Cf. Camelot Terrace, Inc. v. Nat'l Labor Relations Bd.*, 824 F.3d 1085, 1092 (D.C. Cir. 2016) (reviewing an NLRB decision).

---

[4] *See, e.g., United States v. Anheuser-Busch Inbev SA/NV and SABMiller PLC*, 1:16-cv-01483 (D.D.C. Oct. 10, 2018); *United States v. Verso Paper Corp. and NewPage Holdings Inc.*, 1:14-cv-2216 (D.D.C. Dec. 11, 2015); *United States and Plaintiff States v. Comcast Corp.*, 1:11-cv-00106 (D.D.C. Feb. 22, 2011); *United States v. KeySpan Corp.*, 1:10-cv-01415 (S.D.N.Y. Feb. 2, 2011).

As the Supreme Court has held, when Congress creates obligations of this nature, certain processes necessarily attend these obligations: "We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952) (footnotes omitted). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Id.* at 37; *see Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (quoting *L. A. Tucker*, applying principle to the Prison Litigation Reform Act, and observing that "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"); *Mingo Logan Coal Co. v. Envtl. Prot. Agency*, 829 F.3d 710, 719 (D.C. Cir. 2016) (quoting *L. A. Tucker* and applying principle to EPA's decision to withdraw approval of permit); *Camelot Terrace*, 824 F.3d at 1092 (quoting *L. A. Tucker* and applying principle to NLRB's decision requiring companies to reimburse union bargaining costs).

This Court should so limit amici's evidence at the hearing for the same reasons. As stated in *L. A. Tucker*, "simple fairness" demands it, particularly if the United States has no additional opportunity to test or rebut that evidence.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court clarify and amend the Court's proposed procedures in this Tunney Act proceeding as detailed and set forth in the attached proposed order. In addition, to avoid the substantial prejudice to the parties

and amici that would result from the absence of advanced notice of the Court's decision on these requests, the United States asks that the Court rule on this motion sufficiently in advance of the hearing that the participants have adequate opportunity to adjust their presentation as needed.

Dated: May 24, 2019

                                         Respectfully submitted,

                                         _____/s/_____

                                         Jay D. Owen
                                         Andrew J. Robinson
                                         U.S. Department of Justice
                                         Antitrust Division
                                         450 5th Street, NW, Suite 4100
                                         Washington, D.C. 20530
                                         Tel.: (202) 598-2987
                                         Fax: (202) 616-2441
                                         E-mail: Jay.Owen@usdoj.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(m)**

Pursuant to D.D.C. Local Civil Rule 7(m), I hereby certify that I discussed the foregoing

Motion with counsel for CVS. CVS does not oppose the relief sought in this motion.

          /s/
_____
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jay D. Owen, hereby certify that on May 24, 2019, I caused a copy of the foregoing

document to be served upon Plaintiffs State of California, State of Florida, State of Hawaii, State

of Washington, and Defendants CVS Health Corporation and Aetna Inc., via the Court's

CM/ECF system, and to be served upon Plaintiff State of Mississippi by mailing the document

electronically to its duly authorized legal representative:


**Counsel for State of Mississippi:**
Crystal Utley Secoy
Consumer Protection Division
Mississippi Attorney General's Office
P.O. Box 22947
Jackson, Mississippi 39225
Phone: (601) 359-4213
cutle@ago.state.ms.us


                                        _____/s/_____
                                        Jay D. Owen
                                        U.S. Department of Justice
                                        Antitrust Division
                                        450 5th Street, NW, Suite 4100
                                        Washington, D.C. 20530
                                        Tel.: (202) 598-2987
                                        Fax: (202) 616-2441
                                        E-mail: Jay.Owen@usdoj.gov