### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA *et al.*,

        *Plaintiffs*,

v.

CVS HEALTH CORPORATION

and

AETNA INC.,

        *Defendants.*

Case No. 1:18-cv-02340-RJL

### UNITED STATES' MOTION TO PRESENT
### REBUTTAL TESTIMONY AND EVIDENCE

As raised by the United States during the Tunney Act hearing held on June 4–5, 2019, much of the testimony from amici's witnesses was inaccurate on key points that inform whether the proposed Final Judgment is in the public interest.[1] Because the United States was not permitted to call its own witnesses,[2] cross-examine amici's witnesses,[3] or object to direct testimony,[4] the United States was unable to correct the record during the hearing. Although the Tunney Act Materials provide a sufficient factual basis for the Court to enter the proposed consent judgment, in light of the testimony offered during the hearing, and in order to provide a

---

[1] June 5 P.M. Hr'g Tr. 365:4–8. At the close of the hearing, the United States therefore asked to present a full rebuttal, and the Court directed the United States to put this request in the form of a written motion. *Id.* at 365:9–10. This motion represents that request. In accordance with the Court's June 7, 2019 Minute Order, the United States also will submit a supplemental brief related to the Tunney Act hearing on or before June 21, 2019.

[2] *See* May 30, 2019 Minute Order.

[3] *See* Dkt. No. 90.

[4] *See* June 4 A.M. Hr'g Tr. 10:5–6.

more accurate record for the Court to perform its limited role of determining whether the remedy reasonably addresses the harm alleged in the Complaint, the United States requests the opportunity to present rebuttal testimony and evidence. As explained in more detail below, the United States believes it can accomplish the necessary presentation of evidence in approximately eight hours of testimony.

**I.      Because court hearings must be fair and follow accepted process, the United States should be allowed to present its rebuttal.**

Although the Tunney Act authorizes courts to conduct proceedings "in the public interest as the court may deem appropriate" and allow "participation in any . . . manner and extent which serves the public interest," 15 U.S.C. § 16(f)(3), (5), "[t]he district judge may not rely on that language to abandon all precedent governing accepted process in federal courts. The public interest, after all, includes an interest in fairness to all parties." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). Thus, once a court decides to hold an evidentiary hearing that goes beyond the Tunney Act's comment-and-response administrative process, *see* 15 U.S.C. § 16(e)(2), the district judge may not disregard "accepted process in federal courts" for that hearing, *see Microsoft*, 56 F.3d at 1464.

The ability of a party to respond to arguments against it is fundamental to accepted process in an adversarial hearing such as the one held on June 4–5. The hearing was "related to the Government's Motion for Entry of Final Judgment,"[5] and the Court allowed amici to present witnesses at the hearing in opposition to that motion.[6] When, as here, a motion is "opposed," two or more entities participating in the matter "have adverse interests" concerning the subject of the motion, and they "square[] off as adversaries" on that subject, "adjudication of the specific issue

---

[5] Dkt. No. 90 at 2.
[6] *See id.*

. . . [is] adversarial." *Ayestas v. Davis*, 138 S. Ct. 1080, 1090 (2018). This means that the procedural safeguards applicable to adversarial hearings apply. As the D.C. Circuit explained in the context of the Tunney Act, "a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party *and to meet them.*'" *Microsoft*, 56 F.3d at 1464 (emphasis added, *quoting In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986)); *see also Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 28 (1981) ("as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests"). Accordingly, the Court should allow the United States a reasonable opportunity to meet amici's claims, including claims made in the hearing that were previously undisclosed. Similarly, although the Court allowed CVS witnesses in support of entering the motion, CVS cannot stand in for the United States to represent the public interest as it relates to entry of the Final Judgment. Indeed, CVS is the adversarial party to the United States when it exercises its prosecutorial discretion to obtain the best settlement it can to address the harms alleged in the Complaint.[7]

The requirement that proceedings follow fair process applies regardless of whether a proceeding is a hearing or a trial: "The functions of a witness are identical at an adversarial pretrial hearing and at the trial on the merits. In both types of proceedings, the witness assists the trier of fact in ascertaining the truth." *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir. 1987) (Section 1983 case); *see also Ventura v. Shalala*, 55 F.3d 900, 905 (3d Cir. 1995) ("Although administrative hearings are not formal trials, nor should they be so informal or limited that their fairness is destroyed," *quoting Rosa v. Bowen*, 677 F. Supp. 782, 785 (D.N.J. 1988)); *Bender v.*

---

[7] *See* Dkt. No. 102 at 2, 9–11 (explaining the United States and CVS are adverse parties with differing interests).

*Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984) ("Although the procedural safeguards elicited in § 556 of the APA do not apply to informal administrative hearings, the agency's ultimate review of the evidence presented at any hearing must not controvert basic principles of fairness.") (footnote and citation omitted); *Downey v. United States*, 91 F.2d 223, 231–32 (D.C. Cir. 1937) ("[s]uch relaxation of the rules of evidence or of the formalities of judicial procedure as results in denial of fair hearing in the legal sense has been discountenanced by the United States Supreme Court"). In order to respond to amici's factual and opinion claims with evidence that will help ascertain the truth, the United States should be permitted to present a full rebuttal of amici's testimony.

## II.   The United States' rebuttal would identify numerous factual inaccuracies presented by amici.

If allowed to present a rebuttal case, the United States' witnesses would further demonstrate that the proposed Final Judgment is in the public interest because the judgment reasonably addresses the harm to competition in the PDP markets identified in the Complaint. The rebuttal would also correct multiple, fundamental errors in at least three categories of amici's testimony: whether the remedy is likely to preserve competition; whether WellCare is likely to be foreclosed; and whether the divestiture itself will likely cause anticompetitive effects. The following examples of those errors are not exhaustive, but highlight the value of the United States' rebuttal case to the goal of ascertaining the truth.

### A.   Amici's testimony that the divestiture will fail was based on unfounded speculation.

As explained in the United States' Response to Comments, the proposed Final Judgment provides an effective and appropriate remedy for the transaction's likely anticompetitive effects. Amici, however, made unsupported statements about WellCare's ability to compete effectively

with the divested assets.[8] These opinions represented ungrounded speculation about WellCare's

operations and effectiveness, based neither on personal knowledge, *see* Fed. R. Evid. 701, nor

any type of scientific, technical, or other specialized knowledge, *see* Fed. R. Evid. 702.

By contrast, if allowed to put on a rebuttal case, the United States could present a

WellCare witness to testify from personal knowledge as to WellCare's competitive position and

how it intends to compete with the divested assets.[9] A WellCare executive could explain why

WellCare bid for the Aetna assets and how the company plans to use them. A WellCare

executive could also explain how the divestiture package will likely enable WellCare to improve

its overall PDP strategy. In addition, a WellCare witness could address what WellCare learned

from reviewing Aetna's pharmacy contracts and how that information has already influenced

WellCare's PBM strategy. And a WellCare executive could discuss how the divestiture package,

including the Aetna lives, will likely continue to improve WellCare's PBM strategy.

At the hearing, amici also incorrectly speculated that the divestiture will fail because

WellCare's brand is not as well known as Aetna's.[10] These opinions, however, were based on

untested assumptions about the use of brands in PDP markets. If permitted to provide rebuttal

testimony, the United States would provide expert testimony that explains why amici's experts

overstated the risk that the divestiture will fail because of brand.

Through WellCare executives or other industry fact witnesses, the United States would

also present testimony that WellCare has been successful competing under its own brand name,

including 2019 growth that was nearly four times larger than Aetna's in individual PDP. Based

---

[8] *See, e.g.*, June 4 A.M. Hr'g Tr. 57:4–6 ("So I think the reason they bought it at such a low price is because they know they wouldn't be able to retain these profits – these customers.")
[9] *See, e.g.*, Dkt. No. 84 at 3–5.
[10] *See, e.g.*, June 4 A.M. Hr'g Tr. 64:25–65:13.

on this additional fact testimony, the United States would be able to present economic testimony that the proposed Final Judgment is likely to remedy the anticompetitive effects alleged in the Complaint and that amici's concerns about branding are unpersuasive.

**B.     Amici's testimony related to vertical foreclosure was incomplete and relied on faulty premises.**

Amici also provided critically flawed testimony relating to the topic of WellCare being vertically foreclosed. For example, Drs. Sood and Moss speculated that CVS would have the incentive to foreclose WellCare from PBM services, but did not present a complete economic analysis (or, in Dr. Moss's case, any economic analysis at all) to substantiate their claims.[11] If allowed, the United States would call expert and fact witnesses to demonstrate that—consistent with the results of Plaintiffs' in-depth, 11-month investigation—Dr. Sood's analysis is flawed and incomplete, and that an economically correct analysis with accurate financial data and diversion estimates leads to the conclusion that CVS would have neither the incentive nor ability to foreclose WellCare.

Dr. Sood also testified that the PBM market is opaque and that this opacity would facilitate vertical input foreclosure. If allowed, however, the United States would call industry witnesses and provide evidence to corroborate testimony from Ms. Swanson that market checks and other features of the PBM market allow customers to effectively determine the competitiveness of their PBM pricing. Contrary to Dr. Sood's testimony, the United States would show that WellCare has a number of options for PBM services.

Finally, Dr. Sood incorrectly suggested that CVS Caremark will become a "must-have" PBM after the merger because it will add approximately 21 million lives that Aetna insures.[12]

---

[11] June 4 A.M. Hr'g Tr. at 10:11–74:3; June 4 P.M. Hr'g Tr. at 93:3–100:18 and 133:6–171:14.
[12] June 4 A.M. Hr'g Tr. at 27:14–29:3; 32:19–33:25; 64:24–66:11.

This testimony exceeded the scope of the Tunney Act to the extent that it goes beyond foreclosure of WellCare's ability to obtain PBM services, however, the United States would show that this figure, which was repeated by the Court,[13] is significantly overstated and does not represent a meaningful increase in Caremark's bargaining leverage.

### C. Amici's testimony that the divestiture would cause anticompetitive effects contained critical flaws.

Finally, even though the proposed settlement requires Aetna to divest its entire individual PDP business to WellCare, Dr. Sood testified that the divestiture would still result in anticompetitive effects. This testimony was based on at least three critical flaws.

First, Dr. Sood relied on what he called a "retention analysis," which had not been previously disclosed to the United States and suggests that the less business WellCare retains, the more business CVS gains, resulting in markets with the potential for anticompetitive effects.[14] If allowed to testify, however, the United States' economic expert would explain how Dr. Sood's analysis contains basic errors in its HHI calculations and wrongly assumes that CVS would win any business that WellCare lost. His analysis also ignores automatic enrollment, disregards evidence that WellCare will likely retain the divested lives, and fails to incorporate basic characteristics of Part D markets that discourage CVS from replicating the Aetna plans in the future.

Second, Dr. Sood testified that even if WellCare retains all of the divested business, the divestiture would result in significant competitive concerns in seven markets.[15] In reaching this conclusion, however, Dr. Sood misinterpreted and misrepresented the Horizontal Merger Guidelines, introduced a previously undisclosed analysis of the relationship between

---

[13] June 5 P.M. Hr'g Tr. at 319:15–18.
[14] *See* June 4 A.M. Hr'g Tr. 49:15–53:19.
[15] *See* June 4 A.M. Hr'g Tr. 58:14–59:13.

concentration and premiums, and ignored other competitive conditions indicating that the merger was unlikely to substantially lessen competition in these moderately concentrated markets. The United States would present witnesses and econometric analyses to address these errors and show that the divestiture is unlikely to substantially lessen competition in these markets.

Third, Dr. Sood—relying on a previously undisclosed analysis that the American Medical Association's other proposed expert, Dr. Scheffler, apparently updated on his website the weekend before the hearing—testified that the divestiture would increase WellCare's share of low-income beneficiaries beyond 35 percent in two regions: Arkansas and Hawaii.[16] The United States' economic expert would explain, however, that Dr. Sood's conclusion is incorrect because it does not incorporate Medicare Advantage plans that include prescription drug coverage. As Dr. Sood's own demonstrative recognizes, individuals enrolled in Medicare Advantage must be included in the calculation for setting the low-income subsidy benchmark.[17] The United States' economic expert could testify that when correcting for this mistake, WellCare's share of LIS beneficiaries is well below 35 percent in both Arkansas and Hawaii.

After correcting these mistaken analyses, the United States would present economic testimony that the proposed Final Judgment is unlikely to cause anticompetitive effects.

## III.    The Scope of the Proposed Rebuttal

Given the problems with amici's testimony, the United States should be permitted to rebut fully amici's untested claims before the Court relies on them to determine whether the proposed Final Judgment is in the public interest. Given the scope of amici's testimony and the number of errors presented, the United States requires approximately eight hours to present

---

[16] *See* June 4 A.M. Hr'g Tr. 64:5–23.
[17] *See* Sood Demonstrative, at 22.

witnesses and evidence and to recall and cross-examine amici's witnesses. The United States requires at least two weeks' notice to engage and prepare the additional witnesses it requires.

Although amici who oppose entry of the final judgment received only four hours to put on evidence, their witnesses' statements were conclusory. In order to provide the necessary context and detail to show why the conclusory statements are inaccurate, the United States requires more time for its rebuttal. Moreover, eight hours is equal to the combined time given to amici and CVS, whose interests are largely private. It would be appropriate to allow the United States equal time to represent the public interest.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its Motion to Present Rebuttal Testimony and enter a scheduling order to resume the evidentiary hearing that took place on June 4–5.

In the alternative, if the Court agrees with the United States that the amici testimony was unsupported, and thus insufficient to raise any public-interest concerns, then the United States requests that the Court enter the proposed Final Judgment at this time. Doing so would conserve prosecutorial and judicial resources, and end the ongoing interference in the parties' business and the uncertainty that has resulted for consumers and the market.

Dated: June 13, 2019

Respectfully submitted,


_____/s/_____
Jay D. Owen
Shobitha Bhat
Natalie R. Melada
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(m)**

Pursuant to D.D.C. Local Civil Rule 7(m), I hereby certify that I discussed the foregoing Motion with counsel for CVS. CVS does not oppose the relief sought in this motion.

As a courtesy, I also conferred with amici, who do not support the relief sought in this motion.

_____/s/_____

Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jay D. Owen, hereby certify that on June 13, 2019, I caused a copy of the foregoing document to be served upon Plaintiffs State of California, State of Florida, State of Hawaii, State of Washington, and Defendants CVS Health Corporation and Aetna Inc., via the Court's CM/ECF system, and to be served upon Plaintiff State of Mississippi by mailing the document electronically to its duly authorized legal representative:

**Counsel for State of Mississippi:**
Crystal Utley Secoy
Consumer Protection Division
Mississippi Attorney General's Office
P.O. Box 22947
Jackson, Mississippi 39225
Phone: (601) 359-4213
cutle@ago.state.ms.us

_____/s/_____
Jay D. Owen
U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 4100
Washington, D.C. 20530
Tel.: (202) 598-2987
Fax: (202) 616-2441
E-mail: Jay.Owen@usdoj.gov