**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.* ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | Case No. 1:18-cv-02340-RJL |
| ) | |
| **CVS HEALTH CORPORATION** ) | |
| ) | |
| **and** ) | |
| ) | |
| **AETNA INC.** ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

**AMICUS CURIAE AMERICAN MEDICAL ASSOCIATION'S RESPONSE**
**TO THE SUPPLEMENT TO THE UNITED STATES' MOTION**
**TO PRESENT REBUTTAL TESTIMONY AND EVIDENCE**

In its supplement to its Motion to Present Rebuttal Testimony, the United States criticizes the American Medical Association for using 2018 data instead of 2019 data when calculating WellCare's growth. [Dkt. # 126 at 1–2.] The United States has also criticized the AMA's calculations of market concentration for "contain[ing] basic errors regarding the relevant product and geographic markets: they inappropriately include employer-sponsored *group* prescription drug plans, and in some instances assign market share to plans in regions where the plans are not offered."[1] [Dkt. # 119 at 12.]

---

[1] These criticisms appear to be related; there are regions in which certain PDP sponsors have enrollees in their group plans, but in which those sponsors do not offer individual plans. Including those sponsors in the calculations could make it seem as if they participate in the individual market in regions where they do not do so.

In response to the United States' criticism, the AMA has asked its expert witnesses Richard Scheffler, Ph.D.[2] and Neeraj Sood, Ph.D. to recalculate the effect of the merger and divestiture as the United States has advocated: with 2019 data, including only individual PDPs (not group PDPs). The results are *far* worse for the United States. The AMA's previous calculations showed that the increase in the Herfindahl–Hirschman Index (HHI) would "potentially raise significant competitive concerns" under the DOJ/FTC Horizontal Merger Guidelines in seven of the thirty-four PDP regions. [Dkt. # 62 at 6.] There were no regions in which the merger and divestiture would "be presumed to be likely to enhance market power" under the Horizontal Merger Guidelines. Using the United States' methodology, the merger and divestiture potentially raise significant competitive concerns in thirty of the thirty-four regions, and would be presumed to be likely to enhance market power in one (Hawaii). *See* Ex. 1 at 5. A summary of the results is below:

|  | **Previous AMA Calculation** | **United States' Methodology** |
|---|---|---|
| Regions that "potentially raise significant competitive concerns" | 7 (21% of regions) | 30 (88% of regions) |
| Regions "presumed to be likely to enhance market power" | 0 | 1 |
| "Highly concentrated" regions after divestiture | 1 | 3 |
| Maximum increase in HHI | 230 | 315 |
| Minimum increase in HHI | 13 | 61 |

---

[2] Professor Scheffler is a Distinguished Professor of Health Economics and Public Policy at the School of Public Health and the Goldman School of Public Policy at the University of California, Berkeley. He is also the Director of UC Berkeley's Nicholas Petris Center on Healthcare Markets and Consumer Welfare, and UC Berkeley's Global Center for Health and Economic Policy Research. He was assisted on this project by Daniel Arnold, the Research Director of the Petris Center and a Ph.D. economist with significant experience in antitrust within healthcare markets.

The United States bears the burden in this proceeding to "provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 16 (D.D.C. 2007). And the United States has maintained in this case that "[t]he standard for an acceptable divestiture is that it restore competition to pre-merger levels."[3] The United States' methodology for calculating market concentration shows that this will not happen: concentration will increase significantly in all but three of the thirty-four regions, and there is a region in which enhanced market power is presumed.[4]

Moreover, it is impossible for WellCare to remedy these broad and significant increases in market concentration by competing aggressively. Using the United States' preferred methodology for measuring market concentration, Professor Sood calculated the smallest possible increase in HHI under the two best possible scenarios for the United States: WellCare takes as much market share as it wants from CVS, and WellCare takes as much market share as it wants from *any* competitor. He then determined the number of regions in which there would still remain potentially significant competitive concerns or a presumption of enhanced market power. As summarized below, under the United States' methodology, the number of regions with serious competitive problems that WellCare cannot solve is much higher than originally thought:

---

[3] *United States v. CVS and Aetna*, Questions and Answers for the General Public, https://www.justice.gov/opa/press-release/file/1099806/download.

[4] Under the Horizontal Merger Guidelines, the presumption "may be rebutted by persuasive evidence showing that the merger is unlikely to enhance market power." The only evidence the United States has ever offered on this point is that Aetna and WellCare's combined market share is below 25 percent in all regions, and all regions have other significant competitors. [Dkt. # 56 at 22–23.] That is not true in 2019 (the year the United States says should be used): Aetna and WellCare's combined share of the individual PDP market in Hawaii (in which enhanced market power is presumed) is 28.8 percent. *See* Ex. 1 at 7–8 (Region 33). Their combined market share also exceeds 25 percent in the Mississippi region, where the increase in HHI is 314 points, or more than triple the amount that would "potentially raise significant competitive concerns." *See id.* at 5, 7–8 (Region 20).

|  | **Previous AMA Calculation** | **United States' Methodology** |
|---|---|---|
| Regions that "potentially raise significant competitive concerns" (WellCare takes from CVS) | 4 (12% of regions) | 26 (76% of regions) |
| Regions "presumed to be likely to enhance market power" (WellCare takes from CVS) | 0 | 1 |
| Regions that "potentially raise significant competitive concerns" (WellCare takes from anyone) | 2 (6% of regions) | 21 (62% of regions) |
| Regions "presumed to be likely to enhance market power" (WellCare takes from anyone) | 0 | 1 |

Ex. 2 at 7–8. Thus, in most regions of the country, it is literally impossible for WellCare to reduce concentration below the Horizontal Merger Guidelines' threshold of concern—much less restore competition to premerger levels—through aggressive competition.

## CONCLUSION

Under the United States' own methodology for calculating market concentration, the merger and divestiture fail to restore competition to premerger levels in nearly all of the country. Robust competition from WellCare cannot solve the problem. Entry of the Proposed Final Judgment should be denied.

Dated:  July 16, 2019

Respectfully submitted,

*/s/ Henry C. Quillen*
Henry C. Quillen (Bar ID 986686)
WHATLEY KALLAS LLP
159 Middle St., Suite 2C
Portsmouth, NH 03801
Telephone: (603) 294-1591
Fax: (800) 922-4851
hquillen@whatleykallas.com

Henry S. Allen, Jr. (admitted *pro hac vice*)
Senior Attorney, Advocacy Resource Center
AMERICAN MEDICAL ASSOCIATION
330 N. Wabash
Chicago, IL 60611
Telephone: (312) 464-4271
Fax: (312) 224-6919
henry.allen@ama-assn.org

*Counsel for the American Medical Association*