# Exhibit 2

# The Market Concentration Effects of the CVS-Aetna Merger and Divestiture of Aetna's PDP Business to WellCare

## Neeraj Sood, PhD

## July, 2019

I thank the American Medical Association for supporting my work in preparing this report. This report reflects my views and opinions, not necessarily the views of the American Medical Association or of my employer, the University of Southern California.

## A.  About the author

I am a Professor of Health Policy and Vice Dean for Faculty Affairs and Research at the Sol Price School of Public Policy, University of Southern California (USC). Sol Price School of Public Policy is ranked 5th in health policy and management in the nation by the US News and World Report. I am a founding member and past Director of Research of the USC Leonard D. Schaeffer Center for Health Policy and Economics. I am also a research associate at the National Bureau of Economic Research -- the nation's premier economics research organization.

I have published more than 100 papers and reports on health policy and economics. My past research has focused on health insurance markets, pharmaceutical markets and global health. This research has been published in leading journals in economics, health policy and medicine including publications in the *Quarterly Journal of Economics, Journal of Economic Perspectives, Journal of Health Economics, JAMA* and *Health Affairs.* My work on health care costs and the pharmaceutical supply chain has been cited by the Council of Economic Advisors of President Obama and President Trump. I have been invited to participate in expert consensus committees of the National Academies of Science, Engineering and Medicine. I have received more than $10 million in extramural research funding and have been a scientific advisor and consultant for several organizations in the health care industry. My work has also been featured in media outlets including the *New York Times*, *Washington Post*, *U.S. News and World Report*, and *Scientific American*. I was the finalist for the 16th and 21st Annual NIHCM Health Care Research Award, recognizing outstanding research in health policy. I was also the 2009 recipient of the Eugene Garfield Economic Impact Prize, recognizing outstanding research demonstrating how medical research impacts the economy.

I am an associate editor for leading journals in my field including the *Journal of Policy Analysis and Management*, *Journal of Health Economics* and *Health Services Research*. I am also a board member of the *American Society of Health Economists*. Prior to joining USC, I was a senior economist at RAND. I obtained my PhD in Public

2

Policy from the Pardee RAND Graduate School and Masters in Economics from Indiana University and Delhi University.

## B.  Scope of this report

I was an expert witness for The American Medical Association in an evidentiary hearing related to whether the proposed final judgement for the CVS-Aetna merger is in the public interest. In my testimony, I presented estimates of the potential effects of the divestiture of Aetna's PDP business to WellCare on market concentration. The DOJ challenged these estimates stating that the estimates had inappropriately included employer-sponsored group prescription drug plans in the relevant product market, and that the estimates used data from 2018 instead of 2019.

In this report, I present estimates of the potential effects of the divestiture of Aetna's PDP business to WellCare on market concentration, excluding data from the employer sponsored PDP market, and using data from 2019, instead of 2018.

I thank Prof. Richard Scheffler, Ph.D., another AMA expert on this case, for providing the revised dataset for this analysis.

## Key Findings

The proposed judgment seeks divestiture of Aetna's PDP business to WellCare as a remedy for the anticompetitive effects of the proposed CVS-Aetna merger in the PDP market. In my testimony, I analyzed the potential effects of the CVS-Aetna merger with divestiture of Aetna's PDP business to WellCare on concentration in the PDP market. I presented the effects under varying scenarios of WellCare's ability to retain Aetna subscribers. I assumed that Aetna subscribers that were not retained by WellCare would move back to CVS-Aetna. In particular, I presented scenarios where WellCare was able to retain 100%, 75%, 50%, 25% and 0% of Aetna subscribers. For each scenario, I estimated: (a) post merger and divestiture market concentration

measured using the Herfindahl-Hirschman Index[1] $(HHI_{merger-divest})$ and (b) change in market concentration from its pre-merger levels also measured using the Herfindahl-Hirschman Index ($\Delta HHI = HHI_{merger-divest} - HHI_{premerger}$). Table 1 below summarizes the antitrust enforcement ramifications of these two measures for enforcement actions according to the DOJ/FTC Horizontal Merger Guidelines.

**Table 1: Implications of post-merger HHI and change in HHI according to DOJ/FTC guidelines**

| $HHI_{merger-divest}$ | $\Delta HHI$ | Implications |
|---|---|---|
| Less than 1500 | Less than 100 | No challenge |
| 1,500 to 2,500 | More than 100 | Potentially raise **significant competitive concerns** and often warrant scrutiny |
| More than 2,500 | 100-200 | Potentially raise **significant competitive concerns** and often warrant scrutiny |
| More than 2,500 | More than 200 | **Presumed likely to enhance market power.** The presumption may be rebutted by persuasive evidence showing that the merger is unlikely to enhance market power. |

---

[1] The Herfindahl-Hirschman Index (HHI) is a commonly used measure of market concentration. It is calculated by summing the squares of the individual firms' market shares. For example, the HHI in a market with one firm controlling 100% of the market is 10,000; with two firms controlling 50% each of the market is 5,000; and with four firms controlling 25% each of the market is 2,500.

In my original calculations, shown on Slide 19 of my presentation at the evidentiary hearing, I calculated the number of PDP regions in which the divestiture would raise potentially significant competitive concerns or a presumption of increase in market power under various assumptions about the percentage of Aetna enrollees that WellCare can retain. Table 2 presents the same analysis, except that it addresses the DOJ concern with my prior HHI calculations by excluding data from the employer sponsored PDP market. I also use data from 2019, instead of 2018.

**Table 2: Number of markets where the merger potentially raises "significant competitive concerns" or where the merger is "presumed likely to enhance market power" as a function of WellCare's ability to retain Aetna subscribers using updated data from 2019.**

| Percent of Aetna Subscribers Retained by WellCare | Number of Markets with Potentially Significant Competitive Concerns* | Number of Markets with Presumption of likely Enhanced Market Power** | Total | Percent of Markets with Potentially Significant Competitive Concerns or Presumption of Enhanced Market Power |
|---|---|---|---|---|
| 100% | 30 | 1 | 31 | 91% |
| 75% | 31 | 1 | 32 | 94% |
| 50% | 28 | 4 | 32 | 94% |
| 25% | 26 | 7 | 33 | 97% |
| 0% | 23 | 10 | 33 | 97% |

Note: Author's analysis of April 2019 enrollment data provided by Prof. Richard Scheffler. The data excludes employer sponsored PDPs.

Table 2 shows that implementing the DOJ recommended changes to the analysis significantly increases competitive concerns due to the CVS-Aetna merger and divestiture compared to those identified in the prior analysis. For example, for the scenario where WellCare is able to retain 100% of Aetna subscribers the merger potentially raises significant competitive concerns in 30 markets (compared to 7 in my prior analysis) and is presumed likely to enhance market power in 1 market

(compared to 0 in prior analysis). As before, we find that competitive concerns increase in scenarios where WellCare is unable to retain some Aetna subscribers. For example, changing WellCare's ability to retain Aetna subscribers from 100% to 50% increases the number of markets where the merger is presumed likely to enhance market power from 1 to 4 markets.

In my testimony, I also presented an analysis that considered scenarios where WellCare is able to retain 100% of Aetna subscribers, and even take subscribers from CVS or other PDP sponsors in such a way that minimizes the increase in concentration. I considered these scenarios to illustrate that even in the unlikely scenario where WellCare can compete aggressively, the merger still potentially raises significant competitive concerns according to the DOJ/FTC guidelines in 4 markets.

Tables 3 and 4 present updated results from these scenarios that address the DOJ concerns by excluding data from employer-sponsored PDPs and using data from 2019, instead of 2018. Table 3 presents results for the scenario where WellCare can retain all of Aetna subscribers and in addition take subscribers from CVS. The results show that even in this scenario, the CVS-Aetna merger raises potentially significant competitive concerns in 26 markets and is presumed likely to enhance market power in 1 market (Hawaii).

Table 4 presents results from the scenario where WellCare can take subscribers from CVS and any other PDP sponsor in any amount it wants; this is the best-case scenario or the scenario where the merger results in the lowest possible increase in HHI. Even in this best-case scenario, the merger raises significant competitive concerns in 21 markets and is presumed likely to enhance market power in 1 market.

**Table 3: Smallest possible increases in market concentration even if WellCare is able to steal market share from CVS**

| Market | Minimum Change in HHI | Post Divestiture HHI |
|---|---|---|
| Kansas | 315 | 2170 |
| Mississippi | 292 | 2327 |
| Texas | 260 | 1948 |
| Virginia | 238 | 1972 |
| Kentucky, Indiana | 235 | 1955 |
| Michigan | 234 | 1613 |
| **Hawaii*** | **224** | **2565** |
| Maine, New Hampshire | 224 | 1943 |
| Ohio | 215 | 1951 |
| Iowa, Minnesota, Montana, Nebraska, North Dakota, South Dakota, Wyoming | 214 | 2067 |
| Arkansas | 206 | 2290 |
| Alabama, Tennessee | 203 | 1884 |
| Arizona | 197 | 1985 |
| Missouri | 196 | 2311 |
| Idaho, Utah | 176 | 2160 |
| North Carolina | 173 | 1816 |
| Wisconsin | 171 | 1900 |
| Connecticut, Massachusetts, Rhode Island, Vermont | 164 | 1748 |
| Nevada | 159 | 2622 |
| Pennsylvania, West Virginia | 154 | 1665 |
| District of Columbia, Delaware, Maryland | 154 | 1914 |
| South Carolina | 147 | 1888 |
| Colorado | 134 | 2262 |
| Oregon, Washington | 128 | 1824 |
| New Jersey | 127 | 2054 |
| Illinois | 117 | 1677 |
| California | 116 | 2053 |

*The merger is presumed to likely enhance market power.
Note: Author's analysis of April 2019 enrollment data provided by Prof. Richard Scheffler. The data excludes employer-sponsored PDPs.

**Table 4: Smallest possible increases in market concentration even if WellCare is able to steal market share from CVS or any other PDP sponsor**

| Market | Minimum Change in HHI | Post Divestiture HHI |
|---|---|---|
| Kansas | 308 | 2162 |
| Mississippi | 292 | 2327 |
| Texas | 260 | 1948 |
| Virginia | 235 | 1970 |
| Kentucky, Indiana | 235 | 1955 |
| Michigan | 234 | 1613 |
| **Hawaii\*** | **224** | **2565** |
| Ohio | 215 | 1951 |
| Arkansas | 206 | 2290 |
| Alabama, Tennessee | 203 | 1884 |
| Maine, New Hampshire | 197 | 1917 |
| Missouri | 196 | 2311 |
| Iowa, Minnesota, Montana, Nebraska, North Dakota, South Dakota, Wyoming | 181 | 2033 |
| Arizona | 177 | 1964 |
| North Carolina | 173 | 1816 |
| Connecticut, Massachusetts, Rhode Island, Vermont | 162 | 1745 |
| Pennsylvania, West Virginia | 154 | 1665 |
| South Carolina | 147 | 1888 |
| Wisconsin | 135 | 1864 |
| California | 109 | 2045 |
| Illinois | 106 | 1666 |
| District of Columbia, Delaware, Maryland | 101 | 1861 |

\*The merger is presumed to likely enhance market power.
Note: Author's analysis of April 2019 enrollment data provided by Prof. Richard Scheffler. The data excludes employer-sponsored PDPs.

**Conclusion**

In this report, I revised my estimates of the potential effects of the CVS-Aetna merger and divestiture of Aetna's PDP business to WellCare on market concentration to address concerns raised by the DOJ. Implementing the DOJ's recommended changes significantly increases competitive concerns due to the CVS-Aetna merger and divestiture compared to those identified in my prior analysis. These competitive concerns remain even under most optimistic scenarios of WellCare's ability to compete with CVS-Aetna in the PDP market.