## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*

        *Plaintiffs*,

v.

CVS HEALTH CORPORATION

and

AETNA INC.

        *Defendants.*

Civil Case No. 18-2340 (RJL)

## FINAL JUDGMENT

WHEREAS, Plaintiffs United States of America and the States of California, Florida, Hawaii, Mississippi, and Washington (collectively, "Plaintiff States"), filed their Complaint on October 10, 2018;

AND WHEREAS, Plaintiffs and Defendants, CVS Health Corporation ("CVS") and Aetna Inc. ("Aetna"), have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights and assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to divest certain assets for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestiture required below can and will be made and that Defendants will not raise claims of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Acquirer" means WellCare or another entity approved by the United States in its sole discretion to whom Defendants divest the Divestiture Assets.

B.    "Aetna" means Defendant Aetna Inc., a Pennsylvania corporation with its headquarters in Hartford, Connecticut; its successors and assigns; and its subsidiaries, divisions, groups, affiliates (for purposes of this definition, CVS is not deemed an affiliate of Aetna), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.    "Aetna Brands" means Aetna's and Aetna's current affiliates' names, marks, logos, colors, and copyrights, including, "Aetna," "Aetna Medicare," "Aetna Medicare Rx," "Aetna Medicare Solutions," "Aetna Coventry," "Aetna Medicare Rx Value Plus (PDP)."

D.     "Aetna's Individual PDP Business" means Aetna's ongoing business of offering PDP plans to individual Medicare beneficiaries under CMS contracts S-5768 and S-5810.

E.     "Broker Contract" means a valid contract with a third-party to sell PDPs under CMS contracts S-5768 or S-5810.

F.     "CMS" means the Centers for Medicare and Medicaid Services, an agency within the U.S. Department of Health and Human Services.

G.     "CVS" means Defendant CVS Health Corporation, a Delaware corporation with its headquarters in Woonsocket, Rhode Island; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

H.     "Divestiture Assets" means Aetna's Individual PDP Business, including:

(1)     all rights and obligations relating to Aetna's Individual PDP Business, including the right to offer individual PDPs to enrollees under CMS contracts S-5768 and S-5810 and the right to receive from CMS a per member per month payment in exchange for providing or arranging for the benefits offered under CMS contracts S-5768 and S-5810; and

(2)     copies of all books, records, and data, both current and historical, relating to CMS contracts S-5768 and S-5810. Where books, records, or data relate to the CMS contracts S-5768 or S-5810, but not solely to these contracts, Defendants must provide all excerpts relating to the S-5768 and S-5810 contracts.

I.     "PDP" means a standalone prescription drug plan option available to Medicare beneficiaries under Medicare Part D that subsidizes the costs of prescription drugs for enrollees.

J.     "Relevant Personnel" means every person providing pharmacy network, product development, and actuarial support for Aetna's Individual PDP Business.

K.     "WellCare" means WellCare Health Plans, Inc., a Delaware corporation with its headquarters in Tampa, Florida; its successors and assigns; and its subsidiaries.

## III.    APPLICABILITY

A.     This Final Judgment applies to each Defendant and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment by personal service or otherwise.

B.     If, before complying with Section IV and Section VI of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendants must require the purchasers to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested under this Final Judgment.

## IV.    DIVESTITURE

A.     Within 30 calendar days after the filing of the Complaint in this matter, Defendants must divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion, after consultation with the Plaintiff States. The United States in its sole discretion may agree to one or more extensions of this time period not to exceed 90 calendar days in total and must notify the Court in such circumstances. Defendants must use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.     If Defendants attempt to divest the Divestiture Assets to an Acquirer other than WellCare, Defendants must promptly make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry

regarding a possible purchase of the Divestiture Assets that they are being divested in accordance with this Final Judgment and provide that person with a copy of this Final Judgment.

C.     Defendants must obtain all regulatory approvals relating to the Divestiture Assets as expeditiously as possible. If applications for approval have been filed with the appropriate governmental units within five calendar days after the United States has provided written notice under Paragraph VII(C) that it does not object to a proposed divestiture, but these required approvals have not been issued or become effective before the end of the period permitted for divestiture, the period for divestiture is extended until five business days after all necessary government approvals have been received. With respect to this Paragraph, an application for CMS approval is deemed to have been filed when Defendants have given CMS advance notice of a possible change in ownership under 42 C.F.R. § 423.551–552, as long as Defendants timely submit all materials required by CMS for approval.

D.     Defendants must permit the Acquirer to have reasonable access to personnel and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.     Defendants may not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

F.     The divestiture under Section IV or VI of this Final Judgment must include the entire Divestiture Assets unless the United States, in its sole discretion, after consultation with the Plaintiff States, otherwise consents in writing. The divestiture must be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing individual PDP business. Defendants will divest the Divestiture Assets in a manner that

demonstrates, to the sole satisfaction of the United States after consultation with the Plaintiff States, that the Divestiture Assets will remain viable and that the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestiture, whether under Section IV or Section VI of this Final Judgment,

    (1)    must be made to an Acquirer that, in the United States' sole judgment, after consultation with the Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of selling individual PDPs; and

    (2)    must be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

    G.    Defendants must communicate and cooperate fully with the Acquirer to work in good faith with CMS to implement a novation process that is efficient and adheres to CMS's requirements. This cooperation includes: (i) preparing and filing as promptly as practicable with any governmental authority or other third party all documentation to effect all necessary, proper or advisable filings; (ii) obtaining as promptly as practicable and maintaining all consents required to be obtained from any governmental authority or other third party that are necessary, proper, or advisable to consummate the transactions contemplated by this Final Judgment; (iii) to the extent permitted by applicable law, furnishing as promptly as practicable to one another or any governmental authority any information or documentary materials reasonably requested or required in connection with obtaining and maintaining such consents; and (iv) communicating and cooperating with the other party and its affiliates in connection with such matters.

    H.    At the option of the Acquirer, Defendants must execute an administrative services agreement, and fully perform the duties and obligations of that agreement until at least December

31, 2019. The services to be provided by Defendants to the Acquirer under the administrative services agreement must encompass all services necessary to operate the Divestiture Assets, including: (1) pharmacy network management and contracting; (2) prescription drug claims processing and run-out of claims processing; (3) utilization review and quality management; (4) data collection, reporting and submission; (5) rebate management; (6) formulary administration; (7) eligibility (including retro-eligibility) and enrollment; (8) billing and invoicing; (9) prescription drug event file management and submission; (10) medication therapy management services; (11) disease management; (12) clinical safety and drug adherence programs; (13) print and fulfillment services; (14) customer service; (15) appeals and grievances; (16) coordination of benefits; (17) record retention; (18) transition services; (19) run-out services; (20) oversight compliance activities; (21) reporting activities; (22) audit support activities; and (23) the provision of actuarial bid data. The terms and conditions of such an agreement must be acceptable to the United States in its sole discretion.

I.       Defendants must grant the Acquirer a non-exclusive, royalty-free license, under which the Acquirer is permitted to use the Aetna Brands for the limited purposes of marketing of the Divestiture Assets, transition to a future branded PDP, communications with enrollees regarding benefits and coverage under the Divestiture Assets, and other materials that are necessary for operation of the Divestiture Assets through December 31, 2019, as permitted by CMS in accordance with all laws and regulations.

J.       During the 2020 plan year (January 1, 2020, through December 31, 2020), Defendants may not directly, or indirectly through an affiliate, offer individual standalone Medicare Part D products under the Aetna Brands.

K.     Except in connection with marketing of the Divestiture Assets for the 2019 plan year (January 1, 2019 through December 31, 2019), Defendants may not use any PDP enrollee data relating to the Divestiture Assets for Part D or Medicare Advantage marketing purposes (including direct mail, email campaigns, outbound Medicare Advantage cross-selling activities, and other similar marketing and retention communications), nor may Defendants instruct brokers to do so.

L.     Defendants must assign to the Acquirer all current and valid Broker Contracts (or a duplicate of those Contracts) concerning the Divestiture Assets and must provide the Acquirer with contact information (name, principal address, key contact, email address, and telephone number) and the terms of PDP-related compensation for each such broker.

M.     During the 90-day period following the closing of the sale of the Divestiture Assets, Defendants must use reasonable best efforts to obtain written consent from retail pharmacy entities with 20 or more locations and pharmacy services administrative organizations to disclose to the Acquirer the rates relating to the Divestiture Assets by basic and enhanced benefit plan, and by PDP contract, including: (1) for the 2019 benefit year, the generic rate, the generic guarantee, the brand rate, the brand guarantee, dispensing fees, any price concessions or direct and indirect remuneration, and any conditions or limitations agreed to in order to achieve these reimbursement rates; and (2) for the 2018 benefit year, any price concessions or direct and indirect remuneration.  Defendants must provide the Acquirer with periodic updates and information regarding its efforts to obtain consent from such entities.  If the entities provide such consent after the 90-day period has expired, but before January 1, 2020, Defendants are still obligated to disclose the reimbursement rates to the Acquirer.  Within 30 days of the closing of the sale of the Divestiture Assets, Defendants must provide aggregate average reimbursement

rates by class of trade (national chains, mass merchandisers, grocers, and pharmacy services administrative organizations) and by basic and enhanced benefit plan under the PDP contracts.

N.     Defendants must use all reasonable efforts to maintain and increase the sales and revenues of the Divestiture Assets, and must maintain at 2018 or previously approved levels for 2019, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets.

## V.     EMPLOYEES

A.     No later than 10 business days following the filing of the Complaint in this matter, Defendants must provide to the Acquirer, the United States, and the Plaintiff States organization charts covering all Relevant Personnel.

B.     Unless the United States otherwise consents in writing after consultation with the Plaintiff States, upon request of the Acquirer, Defendants must make Relevant Personnel available for interviews with the Acquirer during normal business hours at a mutually agreeable location.  Defendants may not interfere with any negotiations by the Acquirer to employ any Relevant Personnel.  Interference includes but is not limited to offering to increase the salary or benefits of Relevant Personnel other than as part of an increase in salary or benefits granted in the ordinary course of business as part of the annual compensation cycle.

C.     For any Relevant Personnel who elect employment with the Acquirer during the recruitment period agreed upon by Acquirer and Defendants, Defendants must waive all non-compete and non-disclosure agreements (except as noted in Paragraph V(E)); vest all unvested pension benefits; vest pro-rata any equity rights that do not vest on an installment basis; vest pro-rata any equity rights that would vest on an installment basis for 2018 or 2019, with the pro-rata basis for installment-based equity rights being the number of days the employee was employed

by Defendants in the year that the installment would vest; and provide all benefits that Relevant Personnel would be provided if transferred to a buyer of an ongoing business.

D.     For a period of one year from the date of filing of the Complaint in this matter, Defendants may not solicit to hire, or hire, any Relevant Personnel who was hired by the Acquirer, unless (a) the individual is terminated or laid off by the Acquirer or (b) the Acquirer agrees in writing that Defendants may solicit or hire that individual.

E.     Nothing in Section V prohibits Defendants from maintaining any reasonable restrictions on the disclosure by any employee who accepts an offer of employment with the Acquirer of Defendants' proprietary non-public information that is (a) not otherwise required to be disclosed by this Final Judgment, (b) related solely to Defendants' businesses and clients, and (c) involving a business other than the Divestiture Assets.

F.     The Acquirer's right to hire personnel under Section V lasts for a period of 60 days after the divestiture closing date.

## VI.     APPOINTMENT OF DIVESTITURE TRUSTEE

A.     If Defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), Defendants must notify the United States and the Plaintiff States of that fact in writing. Upon application of the United States, the Court will appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.     After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee has the right to sell the Divestiture Assets. The Divestiture Trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, after consultation with the Plaintiff States, at such price and on such

terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, VI, and VII of this Final Judgment, and will have any other powers that the Court deems appropriate. Subject to Paragraph VI(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any agents, investment bankers, attorneys, accountants, or consultants, who will be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such agents or consultants will serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.     Defendants will not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objection by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within 10 calendar days after the Divestiture Trustee has provided the notice required under Paragraph VI(A).

D.     The Divestiture Trustee will serve at the cost and expense of Defendants under a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee will account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for any of its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money will be paid to Defendants and the trust will then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee will be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with incentives based on the price and terms of the divestiture and the speed with which

it is accomplished, but the timeliness of the divestiture is paramount. If the Divestiture Trustee and Defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee will, within three business days of hiring any other agents or consultants, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

E.      Defendants must use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee will have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants must provide or develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants may not take any action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee will file monthly reports with the United States and, as appropriate, the Court, setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports will not be filed in the public docket of the Court. Such reports will include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about

acquiring any interest in the Divestiture Assets and will describe in detail each contact with any such person. The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.       If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee will promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports will not be filed in the public docket of the Court. The Divestiture Trustee will at the same time furnish such report to the United States, which will have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter will enter such orders as it deems appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.       If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, the United States may recommend the Court appoint a substitute Divestiture Trustee.

## VII.    NOTICE OF PROPOSED DIVESTITURE

A.       Within two business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States and the Plaintiff States of any proposed divestiture required by Section IV or Section VI of this Final Judgment. If the Divestiture

Trustee is responsible, the Divestiture Trustee must similarly notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.    Within 15 calendar days of receipt by the United States of such notice, the United States, in its sole discretion, after consultation with the Plaintiff States, may request from Defendants, the Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture and the Acquirer. Defendants and the Divestiture Trustee must furnish any additional information requested within 15 calendar days of the receipt of the request, unless the parties otherwise agree.

C.    Within 30 calendar days after receipt of the notice or within 20 calendar days after the United States has been provided the additional information requested from Defendants, the Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States will provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph VI(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section VI may not be consummated. Upon objection by Defendants under Paragraph VI(C), a divestiture proposed under Section VI must not be consummated unless approved by the Court.

## VIII.    FINANCING

Defendants may not finance all or any part of any purchase made under Section IV or Section VI of this Final Judgment.

## IX.    ASSET PRESERVATION

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by the Court. Defendants may not take any action that would jeopardize the divestiture ordered by the Court.

## X.    AFFIDAVITS

A.    Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestiture has been completed under Section IV or Section VI, Defendants must deliver to the United States and the Plaintiff States an affidavit, signed by each Defendant's chief financial officer and general counsel, which describes the fact and manner of Defendants' compliance with Section IV or Section VI of this Final Judgment. Each affidavit must include the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and must describe in detail each contact with any such person during that period. Each affidavit must also include a description of Defendants' efforts to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States, in its sole discretion, after consultation

with the Plaintiff States, to information provided by Defendants, including limitation on information, must be made within 14 calendar days of receipt of such affidavit.

B.     Within 20 calendar days of the filing of the Complaint in this matter, Defendants must deliver to the United States and the Plaintiff States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section IX of this Final Judgment. Defendants must deliver to the United States and the Plaintiff States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed under this Section within 15 calendar days after the change is implemented.

C.     Defendants must keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## XI.     APPOINTMENT OF MONITORING TRUSTEE

A.     Upon application of the United States, the Court will appoint a Monitoring Trustee selected by the United States, after consultation with the Plaintiff States, and approved by the Court.

B.     The Monitoring Trustee will have the power and authority to monitor Defendants' compliance with the terms of this Final Judgment and the Asset Preservation Stipulation and Order entered by the Court and will have any other powers that the Court deems appropriate. The Monitoring Trustee must investigate and report on the Defendants' compliance with this Final Judgment and the Asset Preservation Stipulation and Order, and Defendants' progress toward effectuating the purposes of this Final Judgment, including the implementation and execution of the agreements contemplated in Paragraphs IV(G)–(H) and the hiring of employees under Section V.

C.     Subject to Paragraph XI(E) of this Final Judgment, the Monitoring Trustee may hire at the cost and expense of Defendants any agents, investment bankers, attorneys, accountants, or consultants, who will be solely accountable to the Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment. These agents, investment bankers, attorneys, accountants, or consultants will serve on terms and conditions approved by the United States, including confidentiality requirements and conflict-of-interest certifications.

D.     Defendants may not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities under any Order of the Court on any ground other than the Monitoring Trustee's malfeasance. Any such objection by Defendants must be conveyed in writing to the United States and the Monitoring Trustee within 10 calendar days after the action taken by the Monitoring Trustee giving rise to Defendants' objection.

E.     The Monitoring Trustee will serve at the cost and expense of Defendants, under a written agreement with Defendants and on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The compensation of the Monitoring Trustee and any agents or consultants retained by the Monitoring Trustee will be on reasonable and customary terms commensurate with the individuals' experience and responsibilities. If the Monitoring Trustee and Defendants are unable to reach agreement on the Monitoring Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the Monitoring Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Monitoring Trustee will, within three (3) business days of hiring any agents or consultants, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

F.     The Monitoring Trustee will have no responsibility or obligation for the operation of Defendants' businesses.

G.     Defendants will use their best efforts to assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. The Monitoring Trustee and any agents or consultants retained by the Monitoring Trustee will have full and complete access to the personnel, books, records, and facilities relating to compliance with this Final Judgment, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants may not take any action to interfere with or to impede the Monitoring Trustee's accomplishment of its responsibilities.

H.     After its appointment, the Monitoring Trustee must file reports every 90 days, or more frequently as needed, with the United States, the Plaintiff States, and, as appropriate, the Court setting forth Defendants' efforts to comply with Defendants' obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. To the extent these reports contain information that the Monitoring Trustee deems confidential, the reports may not be filed in the public docket of the Court.

I.     At the discretion of the United States, the Monitoring Trustee may serve until the expiration of the administrative services agreement described in Paragraph IV(H), or January 1, 2020, whichever is later.

J.     If the United States determines that the Monitoring Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Monitoring Trustee.

## XII.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Asset Preservation Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States, including agents and consultants retained by the United States, must, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division and on reasonable notice to Defendants, be permitted:

(1)    access during Defendants' office hours to inspect and copy or, at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

(2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews are subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in Section XII may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If, when Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States must give Defendants 10 calendar days' notice before divulging such material in any legal proceeding (other than a grand jury proceeding).

## XIII.     NO REACQUISITION OR RECOMBINATION OF DIVESTITURE ASSETS

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment. The Acquirer may not purchase or otherwise obtain from Defendants during the term of this Final Judgment any assets or businesses that compete with the Divestiture Assets.

## XIV.     RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV.     ENFORCEMENT OF FINAL JUDGMENT

A.     The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a

preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.     The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.     In any enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

## XVI.     EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment expires 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture has been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XVII.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, any comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 9/4/19

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge